UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES ZIMMERMAN, et al.,

                      Plaintiffs,

      - against -

POLY PREP COUNTRY DAY
SCHOOL, et al.,

                      Defendants.
------------------------------------------------------------X

**O R D E R**

09 CV 4586 (FB)

      On October 26, 2009, plaintiffs James Zimmerman, Philip Culhane, David Hiltbrand, William Jackson, George Zarou, "John Doe I," and "John Doe II," filed this action against defendants Poly Prep Country Day School ("Poly Prep"), William M. Williams, David B. Harman, and unnamed members of the Poly Prep Board of Trustees, pursuant to 18 U.S.C. § 1961, et seq. ("RICO"), alleging that defendants conspired to conceal sexual abuse committed by Philip Foglietta, now deceased, who worked at Poly Prep as a football coach and physical education instructor from 1966-1991.  (Compl.[1] ¶¶ 1-18).

      By Amended Complaint filed on March 26, 2010, plaintiffs identified "John Doe I" as John Joseph Paggioli and added "John Doe III" and "John Doe IV" as party plaintiffs.  (Am. Compl. ¶¶ 14-17).  The Amended Complaint also added state law claims for negligent supervision and retention (see id. ¶¶ 241-48), and breach of fiduciary duties.  (See id. ¶¶ 249-60).

      On April 30, 2010, pursuant to a briefing schedule set by the district court, defendants filed a motion to dismiss the RICO claim in plaintiffs' Amended Complaint, arguing that

---

[1] Citations to "Compl." refer to the original Complaint, filed on October 26, 2009. Citations to "Am. Compl." refer to the Amended Complaint, filed on March 26, 2010.

plaintiffs had failed to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as interpreted by Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Defendants also moved to dismiss plaintiffs' remaining claims as time barred or otherwise not subject to this Court's jurisdiction.

With respect to plaintiffs' RICO claims, defendants argue that such claims are defective as a matter of law because: 1) plaintiffs have not pleaded an injury to "business or property" within the meaning of the statute; 2) defendants' alleged predicate acts did not proximately cause plaintiffs' alleged injuries; 3) plaintiffs have not pleaded "a related and continuous pattern of racketeering activity;" and 4) Poly Prep is not covered by RICO because it cannot be both an "enterprise" and a "person" who conducts the enterprise. With respect to plaintiffs' state law claims, defendants argue that plaintiff Paggioli's claims are barred by *res judicata* and collateral estoppel, and that the plaintiffs' remaining claims are untimely.

Presently pending before the Court is plaintiffs' motion for limited discovery in support of their response to defendants' motion to dismiss.[2]

BACKGROUND

On April 10, 2010, plaintiffs filed a motion for limited discovery, seeking: 1) production of certain investigatory and personnel files from defendants; and 2) the deposition of defendant William M. Williams, the 80 year old former Headmaster of defendant Poly Prep. Defendants

---

[2]On March 25, 2010, the district court referred the parties to this Court to determine if any discovery was appropriate, and on May 21, 2010, granted the parties' application to extend the briefing schedule for the motion to dismiss.

objected to these requests, arguing that all discovery should be stayed pending the outcome of their anticipated motion to dismiss. On April 14, 2010, the parties appeared for a conference before the undersigned, where the Court denied plaintiffs' motion for discovery, without prejudice to renew upon a change in circumstances.

On May 3, 2010, after receiving defendants' motion to dismiss, plaintiffs renewed their request to engage in limited discovery in order to allow them to respond sufficiently to defendants' motion to dismiss. Specifically, as explained in a later filing, plaintiffs seek the following: "1) the Poly Prep [d]efendants' investigative records concerning the alleged sexual misconduct of Philip Foglietta; 2) the Poly Prep [d]efendants' personnel file and records for Philip Foglietta; 3) the deposition of former Headmaster, William M. Williams; and 4) the deposition of current Headmaster, David Harman." (Pls.' Mem.[3] at 10).

After reviewing the numerous letters filed by the parties on the issue, the Court Ordered the parties to appear for a telephonic conference on May 12, 2010, where the Court heard oral argument on plaintiffs' application. The Court reserved decision, and the parties filed supplemental letters after the conference, which the Court has now reviewed.

For the reasons stated below, the Court grants plaintiffs' motion for limited discovery as described herein.

---

[3]Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of their Motion for Limited Discovery, filed on May 13, 2010.

DISCUSSION

A.  Legal Standard

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed R. Civ. P. 26(b)(1); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (opining that the Rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). Unlike the rules governing civil procedure in New York state court, see N.Y. C.P.L.R. § 3214(b), the Federal Rules of Civil Procedure do not provide for an automatic stay of discovery during the pendency of a motion to dismiss. See, e.g., von Spee v. von Spee, 558 F. Supp. 2d 223, 226 (D. Conn. 2008); Kalaras v. Manhattan Eye, Ear & Throat Hosp., No. 95 CV 7784, 1996 WL 727439, at *2 (S.D.N.Y. Dec. 18, 1996) (permitting limited discovery into statute of limitations issues where plaintiff raised equitable tolling in response to defendant's motion to dismiss plaintiff's claims as untimely).  Whether to permit limited discovery during the pendency of a motion to dismiss lies within the broad discretion of the court.  See, e.g., McKenney v. Nat'l Rural Letter Carriers Ass'n, No. 07 CV 584A, 2009 WL 902506, at *1 (W.D.N.Y. Apr. 2, 2009) (denying motion to dismiss without prejudice as premature and authorizing limited discovery); Wynder v. McMahon, No. 99 CV 772, 2008 WL 111184, at *1 (E.D.N.Y. Jan. 9, 2008).

B.  The Plaintiffs' Arguments

Although plaintiffs initially argued that the requested discovery is necessary for plaintiff

Paggioli to respond to defendants' arguments based on *res judicata* and collateral estoppel (Pls.' 5/3/10 Ltr.[4] at 2), plaintiffs now focus their argument on the need to take the requested discovery in order to support their argument that their state law claims are timely under a theory of equitable estoppel. (Pls.' Mem. at 6).

Plaintiffs contend that limited discovery into defendants' alleged fraudulent concealment is particularly necessary to support plaintiffs' argument that defendants should be equitably estopped from raising a statute of limitations defense because defendants engaged in conduct designed to conceal Poly Prep's knowledge of the alleged abuse and to dissuade plaintiffs from commencing a timely lawsuit. (Pls.' 5/5/10 Ltr.[5] at 3; see also Pls.' Mem. at 2). Plaintiffs argue that they need to take the requested discovery to determine the full extent of defendants' knowledge of the alleged abuse and the extent to which defendants took affirmative steps to conceal reports of abuse for the purpose of delaying plaintiffs from bringing this lawsuit. (See Pls.' Mem. at 6). Plaintiffs argue that this information is critical, given the heightened pleading standard announced by the Supreme Court in Ashcroft v. Iqbal, which held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." 129 S. Ct. at 1949-50 (internal quotations and citation omitted). (See Pls.' Mem. at 11-12).

Although plaintiff Paggioli previously filed a state court action against Poly Prep and certain individually named defendants which was dismissed as untimely, plaintiffs argue that

---

[4] Citations to "Pls.' 5/3/10 Ltr." refer to Plaintiffs' Letter to the Court, filed on May 3, 2010.

[5] Citations to "Pls.' 5/5/10 Ltr." refer to Plaintiffs' Letter to the Court, filed on May 5, 2010.

5

Paggioli was unable to obtain discovery of pertinent facts related to Poly Prep's knowledge of the abuse and the cover-up because defendants in the state case filed a motion to dismiss, which automatically stayed all discovery pursuant N.Y. C.P.L.R. § 3214(b). As a result, although plaintiff Paggioli alleged fraudulent concealment in his prior action, plaintiffs contend that "[d]efendants' then successful cover-up and concealment of their actual knowledge of Philip Foglietta's sexual abuse of children prevented [p]laintiff Paggioli from obtaining the 'evidentiary basis' necessary for him to obtain discovery of any kind" in the state action.[6] (Pls.' 5/5/10 Ltr. at 2 (citing <u>Rochester Linoleum & Carpet Center, Inc. v. Cassin</u>, 61 A.D.3d 1201, 1202, 878 N.Y.S. 2d 216, 220-21 (3d Dep't 2009) (requiring "some evidentiary basis for its claim that further discovery would yield material evidence" to permit discovery during the pendency of a motion to dismiss)).

Indeed, it was not until 2009, after the state law action was dismissed, that plaintiffs claim to have uncovered new "details as to the nature and breadth of [d]efendants' fraudulent concealment of their actual knowledge and facilitation" of the alleged sexual abuse, including accounts that many students and their parents had complained to the school about Foglietta's inappropriate behavior and the fact that the school had taken no steps to stop the behavior. (Pls.' 5/5/10 Ltr. at 2; <u>see, e.g.</u>, Am. Compl. §§ 139-40). Now, plaintiffs contend that they need to take limited discovery "to ascertain how, why, and to what extent [d]efendants concealed facts from

---

[6] By decision dated January 5, 2006, the Honorable Lewis L. Douglass granted defendants' motion for summary judgment in the state court action, reasoning that "this case is simply too old." <u>Pagglioli[sic] v. Poly Prep Country Day School</u>, Index. No. 11185/06.

[p]laintiffs about potential causes of action." (Pls.' 5/17/10 Ltr.[7] at 1).

C.    Analysis

    1. Equitable Estoppel Under New York Law

As a preliminary matter, "New York law recognizes the doctrines of equitable tolling and equitable estoppel, which can overcome a statute of limitations defense if the 'plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Sanders v. New York City Dep't of Corr., No. 07 CV 3390, 2009 WL 222161, at *4 (S.D.N.Y. Jan. 30, 2009) (quoting Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007)); see also Zumpano v. Quinn, 6 N.Y.3d 666, 673, 816 N.Y.S.2d 703, 706, 849 N.E.2d 926, 929 (2006) (opining that equitable estoppel operates when it would be "unjust" to allow a defendant to assert a statute of limitations defense) (citing Simcusku v. Saeki, 44 N.Y.2d 442, 449 (1978)). To make out a claim of equitable estoppel, the plaintiff must show: 1) unjust conduct by the defendant; 2) reasonable reliance on that unjust conduct by the plaintiff; and 3) prejudice. See, e.g., William Penn Life Ins. Co. of New York v. Viscuso, 663 F. Supp. 2d 353, 357 (S.D.N.Y. Oct. 7, 2009). Where the plaintiff seeks to apply the doctrine of equitable tolling based on the defendant's concealment without any actual misrepresentation from defendants, the plaintiff then has the burden to demonstrate the existence of a fiduciary duty that would obligate the defendant to disclose such information. See, e.g., Zumpano v. Quinn, 6 N.Y.3d at 674-75, 816 N.Y.S.2d at 707, 849 N.E.2d at 930.

---

[7]Citations to "Pls.' 5/17/10 Ltr." refer to Plaintiffs' Letter to the Court, filed on May 17, 2010.

Defendants argue that discovery into the defense of equitable estoppel would be futile because "each [p]laintiff had sufficient knowledge of his own alleged abuse and of his abuser's employment at Poly Prep for all of the state law claims to accrue and for the corresponding limitations period to begin to run." (Id.) Defendants further argue that the statute of limitations on plaintiffs' state law claims began to run once each plaintiff reached the age of majority (Defs.' 5/6/10 Ltr.[8] at 3), and that nothing defendants did or could have done "could possibility have concealed" the fact that plaintiffs had actual knowledge that they had been abused, and that this abuse was perpetrated by a Poly Prep employee. (Id.) Defendants respond that "[d]iscovery is simply unnecessary here because [d]efendants' motion to dismiss is grounded in fundamental legal principles, not factual issues." (Defs.' 5/6/10 Ltr. at 2; see also Defs.' 5/17/10 Ltr. at 4 (stating that plaintiffs "failed to identify what facts they believe they need in order to counter the Poly Prep [d]efendants' legal arguments")).

In support of this argument, defendants rely heavily on the decision of the New York Court of Appeals in Zumpano v. Quinn, 6 N.Y.3d 666, 849 N.E.2d 926, 816 N.Y.S.2d 703. In citing Zumpano, defendants refer to two companion cases where the New York Court of Appeals declined to apply the doctrine of equitable estoppel to toll the statute of limitations in cases where the sexual abuse of minors was alleged. See Zumpano v. Quinn, 6 N.Y.2d at 671, 816 N.Y.S.2d at 927, 849 N.E.2d at 704 (reviewing Zumpano v. Quinn, 2 A.D.3d 1096, 784 N.Y.S.2d 779 (4th Dep't 2004); and Estate of Boyle v. Smith, 15 A.D.3d 338, 790 N.Y.S.3d 38 (2d Dep't 2005)). In the first of the companion cases, Zumpano v. Quinn, the plaintiff brought

---

[8]Citations to "Defs' 5/6/10 Ltr." refer to Defendants' Letter to the Court, filed on May 6, 2010.

suit against an individual priest and the Catholic Diocese of Syracuse, alleging that the priest sexually assaulted him on numerous occasions from 1963-1970. Id. at 672. In the second case, Estate of Boyle v. Smith, multiple plaintiffs brought suit against thirteen individual clergymen, alleging sexual abuse during the period of 1960 through 1985. See 6 N.Y.2d at 672, 816 N.Y.S.2d at 928, 849 N.E.2d at 705. Defendants in both matters moved to dismiss the complaints as untimely under the applicable statute of limitations; the trial court granted the respective defendants' motion and the Appellate Division affirmed in each case. See id. at 672-73.

After reviewing the law on equitable estoppel, the New York Court of Appeals held that it was "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." Id. at 674 (citation omitted). Applying this standard to the companion cases, the Court found that plaintiffs in both cases failed to satisfy this burden because "each plaintiff was aware of the sexual abuse he or she suffered at the hands of the defendant priests,"[9] and therefore, each plaintiff "certainly" had sufficient information to bring a tort action against defendants. Id.

The Court noted that the plaintiffs had not alleged that they "made timely complaints to

---

[9]The plaintiff in Zumpano v. Quinn also argued that "he suffer[ed] from a mental disability as a direct result of defendants' abuse and that he was consequently rendered incapable of protecting his legal rights." 6 N.Y.2d at 677, 816 N.Y.S.2d at 931, 849 N.E.2d at 708. This argument, which the Court of Appeals ultimately rejected because the plaintiff had failed to establish a continuing disability, is different from the argument advanced by plaintiffs in the case at bar. In this case, plaintiffs do not argue that defendants' actions rendered them *incapable* of protecting their own legal rights; rather, plaintiffs contend that defendants' conduct, including acts of concealment, threats, and misrepresentations, sufficiently dissuaded otherwise capable plaintiffs from either bringing an action or recognizing that they had a cause of action against defendants.

9

the dioceses regarding clergy mistreatment." Id.  Nor had plaintiffs alleged specific misrepresentations made to them or any deceptive conduct that led them to delay bringing suit. Id.  Nowhere in their pleadings had plaintiffs alleged any "new and subsequent acts of wrongdoing" beyond the alleged abuse, sufficient to constitute a basis for equitable estoppel.  Id. at 674-75.  Nor did the Court find any indication that "further discovery would yield such information."  Id. at 675.  Reviewing the allegations in the Zumpano and Estate of Boyle complaints, the Court found that "[s]ubsequent conduct by the dioceses did not appear in any way to alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to bring their claims."  Id. (stating: "No new separate and subsequent acts of wrongdoing beyond the sexually abusive acts themselves are alleged, and equitable estoppel is therefore inapplicable to these cases").  To the extent that plaintiffs in both cases alleged mere concealment without any attendant misrepresentations, the Court held that, even assuming the existence of a fiduciary relationship, equitable estoppel was inapplicable because plaintiffs had failed to demonstrate how any breach of duty "prevented them from bringing a timely action."  Id. at 675-76.

In Estate of Boyle v. Smith, the Honorable G.B. Smith dissented because, although he agreed that the complaint as written was insufficient, he would have allowed plaintiffs to amend their complaint based on his belief that plaintiffs could allege facts sufficient to plead equitable estoppel.  Id. at 678 (Smith, J., dissenting).  According to Judge Smith, the defect in the plaintiffs' complaint was that although the plaintiffs generally alleged conduct by defendants designed to dissuade individuals from pursuing claims, the complaint failed to tie that conduct to specific individual victims; in other words, the named plaintiffs had not averred that they were

the targets of such actions by defendants. Id. at 683 (Smith, J., dissenting). As a result, according to the dissent, "[i]f the current plaintiffs had been the target of the allegations asserted and alleged specific instances, the door would be opened to permitting discovery to aid in the pursuit of the establishment of the claim alleged." Id. (Smith, J., dissenting).

### 2. Plaintiffs Are Entitled to Discovery into Equitable Estoppel

In this case, defendants contend that plaintiffs cannot state a claim for equitable estoppel as a matter of law given the New York Court of Appeals' decision in Zumpano v. Quinn, 6 N.Y. 3d 666, 816 N.Y.S. 2d 703, 849 N.E. 2d 926. However, as plaintiffs correctly point out, Zumpano is readily distinguishable from the case at bar. Although Zumpano considered statute of limitations defenses to allegations of sexual abuse of children, the present case does not contain many of the defects that doomed the companion cases considered by the Court of Appeals.[10] Whereas the complaints in the Zumpano and Estate of Boyle failed to allege that plaintiffs "made timely complaints to the dioceses regarding clergy mistreatment," the Amended Complaint here does contain such allegations. Plaintiffs allege, upon newly discovered

---

[10]Defendants also rely on Mars v. Diocese of Rochester, 196 Misc.3d 349, 763 N.Y.S.2d 885 (N.Y. Sup. Ct. 2003), to argue that plaintiffs' claim of equitable estoppel fails as a matter of law. In Mars, plaintiffs brought suit against defendants for alleged sexual abuse by a priest that occurred between 1977 and 1986. Id. at 350. The court held that the action was barred by the statute of limitations, notwithstanding plaintiffs' argument of equitable estoppel. Similar to the reasoning in Zumpano, the Mars court relied on the fact that the "only specific allegations of 'concealment' occurred in 2001 and 2002[, after the limitations period had run,] when the Dioceses allegedly concealed from individual plaintiffs that other plaintiffs had made similar complaints in that time frame." Id. at 353. In the present case, however, plaintiffs allege acts of concealment dating back decades, many of which took place during the statutory period, as described herein. Thus, contrary to defendants' suggestion that the present case is analogous to Mars, Mars is readily distinguishable.

information, that:  1) in 1966, plaintiff Jackson and his parents reported instances of sexual abuse to Poly Prep administrators, including the headmaster (see Am. Compl. ¶¶ 40-49); 2) in 1972 or 1973, plaintiff "John Doe II" reported allegations of sexual abuse to Robert Foreman, Poly Prep's Head of the Lower School (see id. ¶ 140); and 3) in or about 1973, John Marino, a varsity football player at Poly Prep, and his parents informed administrators at Poly Prep, including defendant Williams, that Marino had witnessed sexual abuse at Poly Prep.  (See id. ¶¶ 61-68).  At one point, plaintiffs allege that Marino's father confronted Foglietta directly, only to be told that "'kids exaggerate things.'"  (Id. ¶ 68).

Similarly, in contrast to the plaintiffs' failure in Zumpano to allege any specific misrepresentations made to them or any deceptive conduct by the defendants, or any "new and subsequent acts of wrongdoing" beyond the alleged sexual abuse, plaintiffs in the present action have alleged numerous such facts.  For instance, plaintiffs allege that during the pendency of the alleged abuse, Poly Prep fraudulently promoted Fogleitta as a "dedicated and righteous coach and physical education instructor" despite the knowledge of certain school administrators of Foglietta's alleged sexual exploitation of children.  (Id. ¶¶ 48-49, 68-75).  Additionally, plaintiffs allege that during this period, the Poly Prep Board of Trustees conducted a "sham investigation" and the school informed parents and students that any accusations of sexual misconduct at the school  "were not credible."  (See, e.g., id. ¶¶ 45, 67-68, 71).  This conduct, promoting the abuser's reputation and denouncing the credibility of the students who had complained, based on an alleged "investigation," was designed to dissuade the underage victims and, more importantly, their parents, from further pursuing their complaints.  Indeed, administrators at Poly Prep suggested that students would face "serious consequences," including expulsion, should the

12

students continue to make such allegations. (See, e.g., id. ¶¶ 45, 67, 71).

Contrary to defendants' argument that plaintiffs had actual knowledge of their cause of action at the moment the alleged sexual abuse took place, additional discovery might establish otherwise. As plaintiffs argue, "these children were incapable of appraising the nature of the conduct." (Id. ¶ 34). Although "a wrongdoer is not legally obliged to make a public confession," see Zumpano v. Quinn, 6 N.Y.3d at 675, 816 N.Y.S.2d at 930, 849 N.E.2d at 707, pressure placed upon students not to report sexual abuse, combined with communications to their parents that any allegations of sexual abuse by their children were unfounded, might support an argument that the students did not realize that they had a cause of action at the time that the alleged sexual misconduct occurred.

Additionally, given the school's alleged misrepresentations and threats of retaliation, it is unclear whether an individual plaintiff's parents were even aware of their child's cause of action at the time of the alleged abuse. It is entirely credible that the boys' parents might have discredited their children's accusations given the school's concealment of other similar complaints and misrepresentations that a thorough investigation had been conducted and concluded that allegations of the abuse were unfounded. For instance, after Marino reported that he had witnessed Foglietta engaging in sexual abuse and his parents had brought the allegations to the attention of Poly Prep, his parents were told that Marino "started a false and malicious rumor." (Am. Compl. ¶¶ 67, 71). Foglietta defended himself against accusations of sexual abuse by stating that "'kids exaggerate things.'" (Id. ¶ 68). Moreover, at no time during the alleged abuse did defendants notify any other Poly Prep students, including those who had made allegations, that other allegations had surfaced. (See, e.g., id. ¶ 73).

13

Defendants argue that, for purposes of their motion to dismiss, they have admitted all allegations in the Amended Complaint and thus no further fact discovery is necessary. However, it is highly likely that defendants have additional information in their possession, particularly given the claim that they conducted an investigation into the charges, which may lead to the discovery of additional information in support of plaintiffs' equitable estoppel argument, including new victims, and additional instances of acts designed to conceal the abuse, or dissuade the filing of suit. This information, which plaintiffs may be able to use to amend their Amended Complaint to add additional allegations of fraudulent concealment, could not have been admitted by defendants for purposes of the motion to dismiss because the facts have not yet been pled. It is only once plaintiffs take limited discovery into facts that defendants have under their exclusive control will plaintiffs be able to fully respond to defendants' motion to dismiss. Since defendants control much of the information that might permit plaintiffs "to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit," plaintiffs should be permitted limited discovery at this time.[11]  See Zumpano v. Quinn, 6 N.Y.3d at 674, 816 N.Y.S.2d at 929, 849 N.E.2d at 706 (citation omitted).

Accordingly, having carefully reviewed the record, the Court finds that plaintiffs are entitled to limited discovery into the issue of equitable estoppel for the purpose of responding to defendants' motion to dismiss plaintiffs' state law claims on statute of limitations grounds. See Wynder v. McMahon, 2008 WL 111184, at *1 (holding that magistrate has broad discretion to

---

[11]Although defendants argue that in the event the district court dismisses plaintiffs' RICO claims, it will likely not retain jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, this Court is in no position to predict how the district court will decide defendants' motion.

14

permit discovery during the pendency of a motion to dismiss).  Permitting such discovery is consistent with the numerous other cases that have permitted discovery into the issues surrounding equitable tolling of the statute of limitations.  See, e.g., Bogues v. United States, No. 09 CV 377, 2010 WL 1063379, at *5 (S.D.N.Y. Mar. 22, 2010); DD v. Lincoln Hall, No. 08 CV 4950, 2009 WL 1706535, at *1 n.2 (E.D.N.Y. June 16, 2009) (noting the need for discovery into issues of equitable estoppel); Daniels v. Provident Life & Cas. Ins. Co., No. 00 CV 668E, 2001 WL 877329, at *9 (W.D.N.Y. July 25, 2001); Schirmer v. Eastman Kodak Co., No. 86-3533, 1987 WL 9280 (E.D. Pa. Apr. 9, 1987) (denying motion to dismiss without prejudice, because of "the possibility that discovery would reveal grounds for equitable tolling").

## CONCLUSION

Accordingly, defendants are Ordered to produce, by June 4, 2010, the Poly Prep investigative records concerning the alleged sexual misconduct committed by Philip Foglietta, as well as the personnel file and records for Philip Foglietta. Plaintiffs will further be permitted to take the deposition of defendant William M. Williams,[12] former headmaster of Poly Prep. The parties shall meet and confer on dates and location for this deposition, taking Mr. Williams' health into account.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing System (ECF) or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
May 25, 2010

_____/s/_____
Cheryl L. Pollak
United States Magistrate Judge

---

[12] The Court notes that plaintiffs also seek to depose the current headmaster, David Harman. That request is denied at this time without prejudice. Mr. Williams, however, is eighty years old, and although defendants' counsel represents that Mr. Williams is in good health, the advanced age of Mr. Williams is another factor that supports permitting his deposition at this time.