UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JAMES ZIMMERMAN, PHILIP CULHANE,
DAVID HILTBRAND, WILLIAM JACKSON,
GEORGE ZAROU, JOHN JOSEPH
PAGGIOLI, "JOHN DOE II," "JOHN DOE III,"
and "JOHN DOE IV,"

                Plaintiffs,

       - against -                        **O R D E R**

POLY PREP COUNTRY DAY SCHOOL,        09 CV 4586 (FB)
WILLIAM M. WILLIAMS, DAVID B.
HARMAN, AND VARIOUS MEMBERS OF
THE POLY PREP BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY
UNKNOWN AND THUS DESIGNATED AS
"JAMES DOES I-XXX,"

                Defendants.
-----------------------------------------------------------X

On April 13, 2011, this Court issued a Memorandum and Order granting plaintiffs additional discovery, in the form of both document discovery and depositions, as a sanction for the defendants' spoliation of evidence. On April 19, 2011, defendants requested clarification from the Court regarding the scope of the discovery awarded. On April 20, 2011, the Court provided the requested clarification and Ordered that, to the extent any confusion remains and "defendants are unsure if a certain document qualifies as being part of the 'investigation' or they believe that a given document is privileged, defendants shall produce a <u>detailed</u> privilege log so that plaintiffs can assess defendants' assertions of privilege." (4/20/11 Order at 3 (emphasis added)).

## DISCUSSION

A. Preliminary Concerns

On June 3, 2011, plaintiffs filed a letter with the Court asserting various discovery transgressions by the defendants and requesting additional sanctions. As has become typical in this case, numerous additional letters going back and forth were filed thereafter, despite plaintiffs' counsel's assertion that "[u]nless the Court directs otherwise, Plaintiffs will refrain, at this time, from providing a more comprehensive response to the other issues raised in counsels' dueling correspondence." (Pls.' 6/8/11 Letter at 2). The Court's Individual Rules clearly state that: "No sur-replies will be accepted without prior permission," let alone sur-sur-replies and responses, which have become common in this case. In accordance with that rule, which applies to all of the Court's cases without exception, the Court now Orders that, absent Court permission, all future motions or letter motions filed in this case shall be limited to an initial motion, a response, and a reply. <u>Any further responses or replies filed without this Court's permission will not be considered</u>.

On a separate note, plaintiffs' counsel admits in his initial letter that "I bring these issues to the Court's attention without first attempting to resolve them with Defendants' counsel because Defendants' continued and blatant discovery non-compliance threatens to delay the fair and expeditious prosecution of this case." (Pls.' 6/3/11 Letter at 5). Local Rule 37.3(a) requires that "[p]rior to seeking judicial resolution of a discovery or non-dispositive pretrial dispute, the attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or by telephone in an effort to resolve the dispute." Based on plaintiffs' failure to meet and confer first, defendants ask the Court to reject plaintiffs' claims of discovery abuse, so that

the parties can complete the briefing on Poly Prep's pending motion to dismiss. (Defs.' 6/8/11 Letter at 2).

Although plaintiffs have admittedly not complied with the Local Rules, the Court will address the issues raised since the parties have already provided full briefing. In the future, however, any letter motions to this Court must indicate that an attempt has been made to reconcile the dispute in compliance with the Local Rules of this district.

The Court will now address the various issues raised by plaintiffs in the order in which they were raised.

B. Privilege Log Deficiencies

Plaintiffs first raise an issue regarding the updated privilege log that defendants produced on May 31, 2011, in response to the Court's April 20, 2011 Order. (Pls.' 6/3/11 Letter[1] at 1). In response to the newly produced log, plaintiffs' counsel seeks an Order requiring defendants to identify "with sufficient particularity as mandated by FRCP 26(b)(5)(ii)," all "notes or transcripts of [Poly Prep's] counsels' interviews with victims or witnesses of Foglietta's conduct" which defendants seek to withhold on the basis of attorney-client or work product privilege. (Id.) Despite the Court's Order for defendants to produce "a detailed privilege log," plaintiffs note that defendants' updated log "does not contain any information as to any notes of any interviews taken by O'Melveny & Myers LLP during its representation of Defendants in this case or in the [earlier] Paggioli case . . . although Defendants advised the Court that such interview notes

---

[1]The Court notes that although plaintiffs' initial letter is dated June 3, 2011, it was not uploaded onto the Electronic Case Filing system until June 8, 2011.

3

existed." (Id. at 2) (emphasis in original).

The last entry in defendants' privilege log (entry number 48), which plaintiffs attached to their June 3, 2011 Letter as Exhibit A, reads as follows:

> We are in possession of various memoranda and related documents prepared by O'Melveny & Myers LLP as litigation counsel for Poly Prep during the course of the lawsuit captioned <u>Paggioli v. Poly Prep Country Day School, et. al.</u>, Index Nos.: 29497/04 & 11188/05 (N.Y. Sup. Ct.), and the instant lawsuit <u>Zimmerman et. al. v. Poly Prep Country Day School, et al.</u>, 09 Civ. 4586 (E.D.N.Y.). These memoranda are not part of any investigation independent of litigation counsel's preparations for the defense of the aforementioned lawsuits, and as such are properly withheld as attorney-client privileged information and/or as attorney work product.

(Entry 48). Plaintiffs assert that "Defendants' lumping together of all O'Melveny & Myers LLP notes and memoranda in their May 31, 2011 Privilege Log, in defiance of the Court's Order and FRCP 26(b)(5)(ii), deprives Plaintiffs of any opportunity to assess and/or challenge with specificity any withheld documents generated by O'Melveny & Myers LLP." (Pls.' 6/3/11 Letter at 2). Plaintiffs therefore request that defendants be Ordered to "produce a revised Privilege Log which shall provide the requisite specific details (time, date, author, addressees, subject matter) for all documents withheld from production on the bases of any claimed privileges." (Id. at 4). In addition, plaintiffs request that defendants be required to "produce all notes and/or memoranda related to O'Melveny & Myers LLP's interviews of any present or former Poly Prep administrators, teachers, coaches, students, Board of Trustees members, agents, or employees, in connection with either the present action or the <u>Paggioli</u> state court action, to the Court, for an <u>in camera</u> inspection, for the Court to assess the legitimacy of all claimed privileges for these specific withheld documents." (Id.)

4

Local Civil Rule 26.2(a)(2)(A) requires applicants to provide the following information when objecting to the production of a document on grounds of privilege:

> (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document . . . including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

A privilege log must provide sufficient details from which it can be determined whether each document is actually protected from disclosure by a privilege. Affidavits, including in camera affidavits, may establish part of the burden for protection; additionally, "courts may also rely on live testimony or in camera inspection of documents." Robinson v. Tex. Automobile Dealers Ass'n, 214 F.R.D. 432, 444 (E.D. Tex. 2003). The Second Circuit has found privilege logs to be deficient when "[t]he log contains a cursory description of each document, the date, author, recipient, and 'comments.'" United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). In United States v. Adlman, the court recognized that work product protection has been denied when an applicant's privilege log does not "provide enough information to support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation." 134 F.3d 1194, 1203 n.6 (2d Cir. 1998) (citing United States v. Constr. Prods. Research, Inc., 73 F.3d at 474).

In Bowne of New York City Inc. v. AmBase Corp., the court held that a privilege log, which listed, "for each document, the date, author, addressees, 'other recipients,' whether the document was a letter or memorandum or set of notes or other type of document, a very skeletal description of 'subject' and an identification of the type of privilege claimed" was insufficiently

informative to support the privilege claims asserted. 150 F.R.D. 465, 474-75 (S.D.N.Y. 1993). In this case, Entry 48 clearly contains even fewer details.

Defendants cite to a number of cases to support their assertion that more information is unnecessary. For example, defendants cite to S.E.C. v. Chakrapani, for the proposition that "both facts and opinions <u>may</u> be protected by the work-product privilege." (Defs.' 6/8/11 Letter at 3 (citing Nos. 09 CV 325, 09 CV 1043, 2010 WL 2605819, at *8 (S.D.N.Y. June 29, 2010) (emphasis added))). This case, however, does not address the question of whether defendants' description in Entry 48 is sufficiently detailed. The court in Chakrapani explicitly noted that because the work-product doctrine provides a qualified privilege, "<u>privileged documents may still be discoverable</u> if they are 'otherwise discoverable' under Rule 26(b)(1) and the opposing party 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" 2010 WL 2605819, at *8 (citing Fed. R. Civ. P. 26(b)(3)(A) (emphasis added)). Thus, a sufficiently detailed privilege log is required in order for a party to analyze the nature of the documents withheld and to make a credible argument that the information is not available from other sources. It may be that the documents referenced in Entry 48 are privileged communications between counsel and their client or constitute protected work product (see Defs.' 6/8/11 Letter at 2-4); however, the Court cannot assess the validity of such a privilege claim without the requisite information provided in a privilege log.

Defendants nevertheless assert that it would be "unduly burdensome" to require them to more specifically categorize the "voluminous documents" over which they are asserting a privilege in Entry 48. (Id. at 2). Even though plaintiffs have made it clear in their Reply that

they are not requesting details for <u>every</u> document that falls within Entry 48, but "[r]ather, plaintiffs seek <u>only</u> a detailed listing of the <u>interview notes</u> which were generated by O'Melveny & Myers" (Pls.' 6/8/11 Letter at 2 (emphasis added)), defendants insist that this limitation does not eliminate "the burden of conducting a document-by-document evaluation of counsel's entire litigation file." (Defs.' 6/9/11 Letter at 2 n.1). Defendants argue that a list of interview notes should not be required because plaintiffs have failed "to rebut Poly Prep's explanation, or supporting authority, as to why these litigation materials are properly withheld." (<u>Id.</u> at 2). However, it is plainly defendants' burden to supply plaintiffs with the requisite information from which to analyze defendants' privilege claims:

> [T]he party invoking the privilege bears the burden of proving the facts underlying any privilege claim by competent evidence, ... typically the logs will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony.

<u>Bowne of New York City Inc. v. AmBase Corp.</u>, 150 F.R.D. at 472, 474.

Defendants further assert that "defense counsel's litigation materials are clearly privileged, and Plaintiffs need no more information to 'assess and/or challenge' this determination than what is already provided in Log Entry 48." (Defs.' 6/8/11 Letter at 2). In support of their assertion that "the information that Plaintiffs seek concerning defense counsel's

7

litigation preparations, including the dates and identities of persons[2] contacted regarding the two lawsuits, is itself protected work product as its disclosure would reveal counsel's litigation strategy" (Defs.' 6/9/11 Letter at 2), defendants cite to Winans v. Starbucks Corp., No. 08 CV 3734, 2010 WL 5249100, at *5 (S.D.N.Y. Dec. 15, 2010). However, the focus in Winans was actually on the production of the underlying documents; privilege logs are not even mentioned in the opinion.

Defendants further argue that "none of counsel's litigation files are relevant in any event." (Defs.' 6/9/11 at 2). Specifically, defendants contend that because the documents listed in Entry 48 "do not concern any investigation independent of the defense of the prior and the current lawsuits," these documents fall outside the scope of the Court's May 25, 2010 and April 13, 2011 Orders. (Defs.' 6/8/11 at 1). Defendants explain that because "[o]utside counsel's litigation materials are not discoverable . . . Poly Prep has logged them simply to advise Plaintiffs and the Court in an abundance of caution that those materials exist." (Id.)

Based on defendants' representation that the items listed in Entry 48 are documents prepared by outside counsel in connection with either this litigation or the Paggioli litigation, the Court agrees with defendants that there is no need at this time to further delineate the specific documents listed in Entry 48. The Court finds that these documents were not covered by the Court's earlier May 2010 and April 2011 Orders, which related to "Poly Prep['s] investigative records concerning the alleged sexual misconduct committed by Philip Foglietta" in relation to

---

[2]While the notes of counsel's interviews with potential witnesses may be privileged, defendants are under a continuing obligation to supplement their Rule 26(a)(1)(A)(i) disclosures to provide "the name . . . of each individual likely to have discoverable information . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). Thus, regardless of the scope of the Court's prior Orders, the Court presumes defendants' compliance with this obligation.

"the issue of equitable estoppel for the purpose of responding to defendants' motion to dismiss plaintiffs' state law claims on statute of limitations grounds." (May 25, 2010 Order at 14, 16; see also April 13, 2011 Order[3] at 66). Since counsel has represented that the documents reflected in Entry 48 relate to the litigation files of the attorneys in this case and in Paggioli, they are not subject to production at this time, unless the files contain investigative notes prepared prior to the Paggioli lawsuit that are covered by this Court's Orders.

However, should the defendants' motion to dismiss be denied and further discovery is Ordered to proceed, defendants will, at that time, be required to prepare a complete listing of the documents for which privilege has been asserted in Entry 48, and an in camera review may be necessary. The Court bases this Order on the understanding that all documents responsive to the Court's earlier Orders have been produced and are not being improperly withheld. As for the remaining entries in the log, the Court finds that, with the exception of Entry 48, the log is sufficiently detailed and need not be further updated at this time.

---

[3]The Court, in its April 13, 2011 Order, further clarified that the documents to be produced were:
> any and all relevant documents which could bear upon the knowledge of anyone at Poly Prep regarding the abuse by Foglietta, including any documents relevant to the investigation into the allegations in general. The Court did not intend to limit the required production to Mr. Sheridan's investigation; the Order was intended to encompass any documents relevant to any investigation into Foglietta's conduct, including complaints by other individuals, whether potential victims or witnesses of Foglietta's conduct, and the school's knowledge of those complaints.

(April 13, 2011 Order at 67).

C. Additional Discovery Issues

   1. POLY 0199

Plaintiffs also allege that defendants improperly, and in "bad faith," redacted a document in their initial production, which should have been produced originally in un-redacted form. (Pls.' 6/3/11 Letter at 3). Plaintiffs note that initially, in August of 2010, defendants produced the document marked POLY 00199, redacted in full as "Redacted-Non-Responsive." (Id. at 2). In their May 31, 2011 supplemental production, pursuant to this Court's Order, defendants produced part of POLY 00199, which apparently reads: "Ed - 'not the school' only admin." (Id.) Defendants have still redacted part of POLY 00199, claiming attorney-client privilege. (Id. at 3).

Plaintiffs assert that the initial redaction of the now un-redacted portion of the document demonstrates bad faith because POLY 00199, "dated August 13, 2002, memorializes a David Harman interview with Edward Ruck," and implies some knowledge of Foglietta's behavior on Ruck's part. (Id.) This appears to contradict another un-redacted document, POLY 00119, which was also memorialized by David Harman, but which explicitly states: "Spoke to Ed Ruck - who had no knowledge of Coach Foglietta's behavior." (Id.) Plaintiffs therefore allege that "Poly Prep produced a David Harman note which suggested that Ed Ruck had no personal knowledge of Mr. Foglietta's conduct, but withheld a David Harman note which may imply that Ed Ruck told David Harman that the Poly Prep administration, rather than the school in general, had known of Mr. Foglietta's conduct." (Id.)

In response, defendants note that POLY 00119 is only a "six-word handwritten statement that remains unclear and ambiguous, even to Poly Prep's counsel." (Defs.' 6/8/11 Letter at 5). Without waiving the privilege, defendants contend that, based on the redacted portions, the

10

document appears "to reflect a privileged conversation concerning how to respond to Mr. Paggioli's demand letter," and therefore, "was most likely non-responsive." (Id.) Although defendants chose to err on the side of caution by now producing this un-redacted portion, they contend that "[t]here is no indication that any part of this document concerns an investigation or anyone's knowledge of abuse." (Id. at 5 n.3). Although plaintiffs seek sanctions based on defendants' decision to withhold this document from Poly Prep's initial disclosures, the Court finds that defendants have now complied with this Court's Orders and that plaintiffs have not shown any prejudice from now receiving this portion of the un-redacted document.

With respect to the portion of POLY 00199 that remains redacted, Poly Prep included this document in its Privilege Log, asserting Attorney-Client privilege, indicating that the "redacted portion reflects [a] conversation with outside counsel regarding response to John Paggioli demand letter." The Court finds that because the now un-redacted portion of POLY 00199 appears to contradict a previously produced document that was arguably favorable to the defendants, POLY 00119, the continued redaction of the remainder of the document warrants in camera review. Defendants are therefore Ordered to provide the Court with an unredacted copy of POLY 00199 by **July 8, 2011**.

### 2. Harry Petchesky Interview Notes

Plaintiffs also allege that defendants "may be withholding various relevant documents which memorialize conversations between or amongst Harry Petchesky and other Poly Prep administrators, employees, or agents, on the basis of a claimed (and patently bogus) attorney-client privilege." (Pls.' 6/3/11 Letter at 3). Specifically, plaintiffs assert that defendants have

"not produced any summary notes of Peter Sheridan's interviews with Harry Petchesky," even though Mr. Petchesky testified at his deposition that he was interviewed by Peter Sheridan during the investigation in or about 2002. (Id.) In response, defendants assert that they are "not withholding any notes pertaining to conversations with Harry Petchesky, and neither Harry Petchesky's testimony nor Poly Prep's detailed privilege log provides Plaintiffs with any basis to make such a charge." (Defs.' 6/8/11 Letter at 2).

However, plaintiffs note that many of the subject matter descriptions in the defendants' privilege log refer to unnamed "outside counsel," and plaintiffs therefore believe that some of those references might be to Mr. Petchesky and that defendants are inappropriately asserting a privilege over these documents. (Pls.' 6/3/11 Letter at 3). While Mr. Petchesky is an attorney, he "testified that he never was retained by Poly Prep to give legal advice regarding any sexual misconduct issues." (Id.) Thus, plaintiffs assert that there is no privilege as to any notes of interviews with Mr. Petchesky. (Id.) However, without the name of that outside counsel listed in the log, "it is impossible for Plaintiffs to properly assess and/or challenge Defendants' claimed privileges." (Id.) Defendants point out that in the privilege log, they have in fact identified the individual "outside counsel" in question, under either the author or addressee(s) columns for the majority of the documents. (Defs.' 6/8/11 Letter at 5-6). Although it might have initially been unclear as to whom "outside counsel" referred to, defendants have now clarified that issue for plaintiffs.

Defendants also note that they did, however, fail to include the names of counsel for entries 5 and 18 and have now informed plaintiffs and the Court of the identities of the "outside counsel" in question. (Id. at 6). Defendants further note that although there remain two entries,

numbers 4 and 36, for which Poly Prep cannot identify the counsel in question, "neither document appears to be notes of a conversation with Harry Petchesky." (Id.) Entry number 4 is described in defendants' privilege log as handwritten notes to file by David Harman, the "redacted portion [of which] reflects conversation with outside counsel regarding strategy for response to David Hiltbrand and John Paggioli demand letters." Entry number 36 is described as a draft of the "June 6, 2002 letter to counsel for David Hiltbrand, prepared under supervision of outside counsel and reflecting outside counsel's legal advice and strategy," drafted by David Harman.

Although plaintiffs believe that "[i]t is truly remarkable and unsettling that Poly Prep and David Harman do not remember, or cannot locate, the name of the attorney," they do not request any specific relief (Pls.' 6/8/11 Letter at 2), aside from that mentioned above. The Court finds that defendants have provided a satisfactory response to plaintiffs' complaints in this regard and therefore no other relief is necessary.

### 3. Board of Trustees Minutes

Plaintiffs also allege that in defendants' new production, "not a single note, memoranda, or any other document, which was generated by the Board of Trustees was produced. Certainly, no Board of Trustees minutes were produced." (Pls.' 6/3/11 Letter at 4). Plaintiffs further note that these documents are not listed in the updated privilege log produced by defendants. (Id.) Plaintiffs assert that defendants' counsel indicated at the October 6, 2010 oral argument that "I have rooms of things including Board minutes" and that Harry Petchesky also testified at his deposition that "Board of Trustees minutes of meetings were regularly prepared and usually

13

attached to agenda listings for the following meeting." (Id. at 3). Therefore, plaintiffs allege that between "October 6, 2010 to May 31, 2011, the Poly Prep Board of Trustees minutes regarding the sexual abuse issues, which unquestionably were discussed by the Board (at least in 2002), seem to have somehow disappeared. These missing Board of Trustees minutes give rise to an inference of spoliation of evidence and/or bad faith discovery conduct." (Id. at 4). Plaintiffs therefore request "a sworn affidavit from a person with knowledge as to why no Board of Trustees minutes were produced to Plaintiffs, and/or an explanation as to when, why, how, and at whose direction, any of those documents were destroyed or discarded." (Id.)

Defendants respond that plaintiffs' allegation is "both irresponsible and frivolous" as "[t]he Board minutes have been collected and reviewed by counsel, and responsive portions thereof have already been produced." (Defs.' 6/8/11 Letter at 1, 4). Defendants assert that they "have in fact collected and reviewed <u>all Board of Trustees minutes from 1966 to October 2009</u> (when this lawsuit was commenced) and have produced any documents that are responsive." (Id. at 4 (emphasis in original)). Defendants claim to have "produced the responsive portion of one of the very board meeting memoranda that Plaintiffs claim is 'missing,' specifically Poly 00176 (Headmaster's Report to the Board of Trustees - November, 2002)," as well as "numerous other communications with individual board members and/or with the full board." (Id.) Asserting that none of the minutes are "missing," defendants assert that a sworn affidavit is not warranted. (Id.)

In their June 8, 2011 reply, plaintiffs reiterate their assertion that "[d]efendants have not produced a single document which was generated by the Board of Trustees, or any individual member of the Board," or "by the Ad Hoc Sexual Misconduct Committee," despite defendants' acknowledgment that the Board conducted meetings regarding the allegations of sexual

14

misconduct and created this special committee of Board members to investigate the allegations. (Pls.' 6/8/11 Letter at 1). Plaintiffs again assert that there is no reference to such documents in defendants' privilege log. (Id. at 2). Therefore, plaintiffs assert that defendants' response was "patently false, easily disproved, and offensive to common sense." (Id.)

Defendants similarly respond by repeating their initial assertion that they have "gathered Board minutes for more than four decades of meetings, these documents have been carefully reviewed for responsiveness, and all responsive portions thereof have been produced." (Defs.' 6/9/11 Letter at 1). Defendants note that "simply because the Board held regular meetings," does not necessarily mean that "the Board generated documents that are responsive to the Court's Orders." (Id.) The Court agrees that it is conceivable that none of the information discussed regarding the sexual allegations was actually documented in the Board minutes, perhaps intentionally to avoid this exact situation. As officers of the Court, counsel has a responsibility to review and produce all responsive documents; given defendants' repeated assertions that they have produced anything relevant, the Court declines to order an affidavit at this time.

D. Additional Requested Remedies and Sanctions

In addition to the aforementioned sanctions, plaintiffs have requested "[t]hat Defendants be required to reimburse Plaintiffs for reasonable attorneys' fees incurred in connection with this application." (Pls.' 6/3/11 Letter at 5). Given that the majority of plaintiffs' requests have been denied, and especially since plaintiffs did not attempt to resolve these issues before involving the Court, the request for fees is denied.

CONCLUSION

In conclusion, the Court Orders as follows: 1) plaintiffs' request for a more specific privilege log and an <u>in camera</u> inspection of defendants' withheld documents is denied; 2) plaintiffs' request for production of POLY 0199 in un-redacted form is denied; however, defendants shall produce this document for <u>in camera</u> review by **July 8, 2011**; 3) plaintiffs' motion with respect to Harry Petchesky's interview notes is denied; 4) plaintiffs' motion for sanctions relating to the Board of Trustees Minutes is denied; 5) plaintiffs' request for fees and costs is denied; 6) all future motions or letter motions in this case shall be limited to an initial motion, a response, and a reply; any additional responses or replies filed without this Court's permission will not be considered; and 7) all future letter motions must be prefaced by a statement that there has been compliance with Local Rule 37.3(a).

The parties are reminded that the next conference in this case is scheduled for **July 15, 2011 at 11:00 AM.**

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
June 30, 2011

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

16