

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | Times Square Tower | NEWPORT BEACH |
| BRUSSELS | 7 Times Square | SAN FRANCISCO |
| CENTURY CITY | New York, New York 10036 | SHANGHAI |
| HONG KONG | TELEPHONE (212) 326-2000 | SILICON VALLEY |
| JAKARTA† | FACSIMILE (212) 326-2061 | SINGAPORE |
| LONDON | www.omm.com | TOKYO |
| LOS ANGELES | | WASHINGTON, D.C. |

June 22, 2012

WRITER'S DIRECT DIAL
(212) 326-2067

**VIA FACSIMILE AND ECF**

WRITER'S E-MAIL ADDRESS
jkohn@omm.com

Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court        **REDACTED VERSION**
United States Courthouse
225 Cadman Plaza East, Room 1230
Brooklyn, NY 11201

      Re:   ***Zimmerman v. Poly Prep Country Day School,***
             **USDC, EDNY Case No. 09 Civ. 4586 (FB) (CLP)**

Dear Judge Pollak:

      We write on behalf of Defendants Poly Prep Country Day School, William M. Williams, David Harman, and certain unnamed members of the Board of Trustees in response to Plaintiffs' June 21, 2012 letter (the "June 21 Letter") to the Court.

      Plaintiffs' letter relates to an e-mail from David Harman to the Board of Trustees attaching a draft of the October 2002 letter to alumni and a collection of five responses to the e-mail. Plaintiffs mention but do not focus on the other recently produced documents—fax cover sheets from David Harman to Robert Herrmann, Esq., Eric McLeish, Esq., former Chair of the Board of Trustees Donald Carswell, and Poly Prep alumnus [REDACTED]. The Poly Prep Defendants discovered these documents in re-reviewing the files collected in the *Paggioli* and *Zimmerman* litigation pursuant to the June 5 Order. As we previously advised Plaintiffs and the Court, these files are voluminous, and many are decades old. The failure to identify the documents as responsive during prior reviews was inadvertent and unintentional, and, we believe, understandable in light of the volume and age of these files (the letters in question being a decade old). Moreover, upon discovery of the correspondence, we promptly advised Plaintiffs and the Court of their existence, produced the responsive non-privileged material to the Plaintiffs, and furnished an updated privilege log to the Court along with unredacted versions of the documents for *in camera* review.

      Following our production on June 15, Plaintiffs wrote to Debevoise & Plimpton on June 18 to "request that defendants make Mr. Harman available . . . for a continuation of his deposition on these points" regarding the recently produced documents. (Pls.' 6/18/12 Ltr. at 2,

†In association with Tumbuan & Partners

Honorable Cheryl L. Pollak, June 22, 2012 - Page 2

attached as Exhibit 1.) We responded to Plaintiffs' letter explaining that the documents in question were discovered during the course of the recent comprehensive review (including the voluminous *Paggioli* file) and that we had inadvertently overlooked this document. (*See* Defs.' 6/21/12 Ltr., attached as Exhibit 2.) We agreed to make Mr. Harman available for a telephonic continuation of his deposition to allow Plaintiffs to question him about the recently produced documents. We did not receive a reply.

Instead of responding to our letter, and notwithstanding Local Rule 37.3(a) and Your Honor's June 30, 2011 Order requiring a moving party to certify that it has made a good-faith attempt to resolve discovery disputes, Plaintiffs have written to the Court to seek relief. It is not clear what the dispute is here, as the Poly Prep Defendants have offered Plaintiffs the opportunity to re-open Mr. Harman's deposition—the very relief they requested in their June 18, 2012 letter to counsel.

Regardless of why Plaintiffs have chosen to present this issue to the Court, there is no basis for Plaintiffs' arguments that the Poly Prep Defendants have deliberately withheld the documents at issue. Most importantly, the documents themselves do not support Plaintiffs' claims of bad faith. Nor do they support Plaintiffs' theory of underlying fraud or wrongdoing concerning Poly Prep's October 2002 letters to its community—in fact, they indicate precisely the opposite and confirm that Poly Prep could have no conceivable reason to improperly withhold these materials. The documents in question show that a draft of the October 2002 letter to alumni was circulated both to outside counsel and to the Board of Trustees and that Poly Prep received feedback from various Board members as part of that process. Plaintiffs' focus on the phrase "thorough investigation" in the draft letter in fact undercuts their claim that the October 2002 to alumni was intended to mislead alumni, as that language was removed from the final version of the letter. The removal of this language demonstrates that Poly Prep did not intend to somehow oversell its investigation through a passing reference in a letter to alumni.

The fact that Board members may have reviewed the letter is not new to the Plaintiffs. As Plaintiffs concede in their letter, Plaintiffs thoroughly aired the issue of how the October 2002 letter was drafted during the depositions of several witnesses, including Mr. Harman. Plaintiffs fail to mention that another witness, Harry Petchesky (whom Plaintiffs deposed ***before*** deposing Mr. Harman) testified that Board members including himself reviewed a draft of the letter. (*See* Petchesky Tr. at 85:22-86:15; 87:6-88:17). In addition, the October 2002 letter itself reads that "the Board . . . authorized the sending of this letter to all alumni and a modified version to parents," indicating that the Board was involved in the decision to send the letter. Thus, to the extent that Plaintiffs wanted to test Mr. Harman's memory of this event a decade ago, they have already had ample means to do so.[i] Moreover, the Poly Prep Defendants have offered to continue Mr. Harman's deposition with regard to the draft in question: there is simply no basis for Plaintiffs to demand further relief. Finally, as confirmation that Plaintiffs need no additional discovery (other than continuing Mr. Harman's deposition) in order to add this issue to their pleadings, Plaintiffs have already alleged in Paragraph 231 of their Complaint that the Board "directed, operated, managed, and/or participated in the aforesaid October, *[sic]* 2002 alumni mailings."

O'MELVENY & MYERS LLP

Honorable Cheryl L. Pollak, June 22, 2012 - Page 3

      Plaintiffs also complain that the recently produced document refers to one Trustee's feedback about an award that Mr. Foglietta may have received. While Plaintiffs declare that "non-production of this document" somehow prevented them from "developing this point in the motions to dismiss," they fail to tell the Court that they have in fact attached to their pleadings a letter from Mr. Hiltbrand's counsel describing this very issue, have had this document since the early days of this litigation, and have had ample opportunity to question witnesses about it if they had wanted to do so. Exhibit F to Plaintiffs' Second Amended Complaint is a letter from David Berger, Esq. to Mr. Herrmann, which says that "there had been a scholarship and a trophy display in [Foglietta's] name but that the former had been discontinued and the latter removed from display." Even though Plaintiffs have been in possession of this letter (and even asked Mr. Williams about it during his deposition two years ago), they now claim that Mr. Foglietta's name as a recipient of an award is a crucial fact that they have somehow been prevented from raising. In reality, Plaintiffs could have questioned Mr. Harman about the award at his deposition a year ago.

      For these reasons, we respectfully submit that the Court should deny the relief that Plaintiffs seek.

Respectfully submitted,

Jeffrey I. Kohn
*of* O'MELVENY & MYERS LLP

cc:     Hon. Frederic Block
          Kevin T. Mulhearn, Esq.
          Edward Flanders, Esq.
          Kimberly Buffington, Esq.
          Philip Touitou, Esq.
          David G. Trachtenberg, Esq.
          Helen V. Cantwell, Esq.
          Harry Petchesky, Esq.

---

[1] Mr. Harman's inability to specifically recall the details of the drafting process is not a "patent and outrageous falsity," but rather the fact that a witness may have misremembered a particular sequence of events that occurred a decade ago.