UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMES ZIMMERMAN, PHILIP CULHANE,
DAVID HILTBRAND, WILLIAM JACKSON,
GEORGE ZAROU, JOHN JOSEPH PAGGIOLI
(Formerly "JOHN DOE I"), PHILIP LYLE
SMITH, DAVID ZARNOCK, PHILIP C.
HENNINGSEN, "JOHN DOE II," "JOHN DOE
III," and "JOHN DOE V,"

          Plaintiffs,

          -against-

POLY PREP COUNTRY DAY SCHOOL,
WILLIAM M. WILLIAMS, DAVID B.
HARMAN, AND VARIOUS MEMBERS OF
THE POLY PREP BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY
UNKNOWN AND THUS DESIGNATED AS
"JAMES DOE I-XXX," HARRY PETCHESKY,
ESQ., ROBERT F. HERRMANN, ESQ., and
MICHAEL NOVELLO,

          Defendants.

No. 09 Civ. 4586 (FB) (CLP)

**Electronically Filed**

## POLY PREP DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DATED JUNE 5, 2012

DEBEVOISE & PLIMPTON, LLP
Mary Jo White
Matthew E. Fishbein
Helen V. Cantwell
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants Poly Prep Country Day School, William M. Williams, David B. Harman, and various members of the Poly Prep Board of Trustees designated as "James Doe I-XXX"*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

I.   THERE IS NO LEGAL BASIS IN THE ORDER FOR AN EVIDENTIARY
     HEARING..............................................................................................................................2

     A.   Plaintiffs Do Not Explain How Their Allegations Present a Sustainable
          Claim of Fraud. ............................................................................................................2

     B.   The Evidentiary Hearing Ordered by Judge Pollak Would Improperly
          Require the Court to Determine Ultimate Issues and Interfere with the
          Relationship Between the Poly Prep Defendants and Their Counsel. ......................4

II.  THERE IS NO LEGAL BASIS IN THE ORDER FOR THE PRODUCTION OF
     A PRIVILEGE LOG OF LITIGATION COUNSEL'S FILES. ...........................................6

     A.   There Is No "Purposeful Nexus" Between Litigation Counsel's 2004-2012
          Communications and Work Product and Plaintiffs' Allegations of Fraud in
          or Before 2002. ............................................................................................................6

     B.   There Is No Basis for the Underlying Fraud Finding. ..............................................8

     C.   A Log of Litigation Counsel's Files Will Reveal Litigation Strategy and
          Work Product, and is Unduly Burdensome. .............................................................9

III. PLAINTIFFS' "NEW EVIDENCE" IS IRRELEVANT TO THE ALLEGED
     FRAUD ON THE COURT AND TO EQUITABLE ESTOPPEL. ....................................11

     A.   Affidavits Concerning 1997 Conversation ...........................................................11

     B.   Poly Prep Document Production.............................................................................15

CONCLUSION..............................................................................................................................17

## TABLE OF AUTHORITIES

CASES

*Aiossa v. Bank of America, N.A.*, No. CV 10-01275, 2011 WL 4026902
(E.D.N.Y. Sept. 12, 2011)......................................................................................8

*AP Links, LLC v. Russ*, No. 09-CV-5437, 2012 WL 3096024 (E.D.N.Y. July 30, 2012)..............8

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983)........................................................13

*Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255 (S.D.N.Y. 2010) ........................................13

*Dunahoo v. Hewlett-Packard Co.*, No. 11 CV 05588, 2012 WL 178332
(S.D.N.Y. Jan. 20, 2012)......................................................................................13

*E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 66 A.D.3d 122
(2d Dep't 2009)......................................................................................13

*Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321 (1957) .......................................................13

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755
(S.D.N.Y. Apr. 29, 2011)......................................................................................5

*In re Grand Jury Subpoenas Duces Tecum, Dated Sept. 15, 1983*, 731 F.2d 1032
(2d Cir. 1984)......................................................................................6, 7, 8

*In re Grand Jury Subpoenas Duces Tecum*, 789 F.2d 32 (2d Cir. 1986)..............................6

*Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, No. CV03-3706, 2005 WL 3533153
(E.D.N.Y. Dec. 22, 2005) ......................................................................................5

*Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010)......................................................................2, 5

*Linde v. Arab Bank*, 608 F. Supp. 2d 351 (E.D.N.Y. 2009) ......................................................10

*McGrath v. Dominican Coll. of Blauvelt*, 672 F. Supp. 2d 477 (S.D.N.Y. 2009)........................13

*Passlogix, Inc. v. 2FA Tech. LLC*, 708 F. Supp. 2d 378 (S.D.N.Y. 2010) ......................................4

*Peri v. State of New York*, 66 A.D.2d 949 (3d Dep't 1978).........................................................13

*Residents for More Beautiful Port Washington, Inc. v. N. Hempstead*, 153 A.D.2d 727
(2d Dep't 1989)......................................................................................13

*Schmidt v. McKay*, 555 F.2d 30 (2d Cir. 1977) ......................................................................13

*St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010) ..............................................13

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522 (2d Cir. 1990)............................................5

*Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457 (2d Cir. 1994) .....................................4

*Zumpano v. Quinn*, 6 N.Y.3d 666 (2006) ..............................................................................12, 14

The Poly Prep Defendants submit this reply memorandum in further support of their Objections to those parts of the Magistrate Judge's Order dated June 5, 2012 requiring an evidentiary hearing and the production of a privilege log of documents in the files of the Poly Prep Defendants' litigation counsel (the "Objections").

## PRELIMINARY STATEMENT[1]

The Poly Prep Defendants demonstrated in their initial brief in support of the Objections that Magistrate Judge Pollak's June 5 Order (the "Order") is clearly erroneous and contrary to law.

Plaintiffs largely ignore the serious questions raised in the Objections, electing instead to reargue their opposition to the Poly Prep Defendants' motion to dismiss the Complaint, which has already been fully briefed.[2]  Consistent with that strategy, Plaintiffs inappropriately submit two affidavits that supposedly reflect a discrepancy in witnesses' recollections concerning the Poly Prep Defendants' knowledge of the alleged abuse.  The purported "new evidence" is irrelevant to the issue of whether the Court's Order is contrary to law, and also adds nothing to Plaintiffs' allegations that would alter the conclusion that, under the governing principles of New York law, equitable estoppel does not excuse the Plaintiffs' failure to timely file their Complaint in this action.

Plaintiffs have had ample opportunity to brief and argue their points in opposition to the motion to dismiss, and their attempt to re-engage the Court on this issue, instead of responding directly to the errors of law raised by this appeal, is telling.  Ultimately the Plaintiffs are unable

---

[1]     As in prior briefing, all citations are to the Third Amended Complaint (With Addendum) ("Complaint"), and the Poly Prep Defendants assume that all facts pled in Plaintiffs' Complaint are true for the sole purpose of testing the Complaint for legal sufficiency.

[2]     *See* Poly Prep Defs.' Mem. of Law in Supp. of Mot. to Dismiss; Pls.' Mem. of Law. in Opp. to Mot. to Dismiss; Poly Prep Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss; Poly Prep Defs.' Supplemental Mem. of Law in Supp. of Mot. to Dismiss; Pls.' Supplemental Mem. of Law in Opp. to Mot. to Dismiss; Poly Prep Defs.' Supplemental Reply Mem. of Law in Further Supp. of Mot. to Dismiss.

to demonstrate a legal or factual basis for Judge Pollak's Order.  For the reasons set forth in the

Poly Prep Defendants' Objections and below, the Court should set aside the objected-to portions

of the Order.

## I.   THERE IS NO LEGAL BASIS IN THE ORDER FOR AN EVIDENTIARY HEARING.

The Poly Prep Defendants have shown that Judge Pollak erroneously relied on

unsupported allegations and misapplied the law in ordering an evidentiary hearing on the alleged

fraud on the Court.  There is no dispute that a magistrate judge retains jurisdiction to address

discovery fraud, and the Poly Prep Defendants have not implied that Judge Pollak should be

deprived of her authority to investigate any alleged fraud.  But as discussed in the Objections,

there is insufficient factual and legal support for an evidentiary hearing here, especially when

there is a pending motion to dismiss.

As a preliminary matter, Plaintiffs' argument that Judge Pollak's Order should be

reviewed under an abuse of discretion standard rather than the "clearly erroneous" or "contrary

to law" standard is irrelevant.[3]  Courts have found the standards to be substantively the same,[4]

and, in any event, when evaluated under either standard, Judge Pollak's Order cannot be

sustained.

### A.   Plaintiffs Do Not Explain How Their Allegations Present a Sustainable Claim of Fraud.

Plaintiffs completely fail to address the arguments made by the Poly Prep Defendants

that there is no factual basis for the purported discrepancies upon which their fraud on the Court

motion is based, and that as a matter of law, differences in recollection, outright factual disputes

---

[3]   *See* Opp'n at 6–7.

[4]   *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010) ("An 'abuse of discretion' occurs when a district court 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions.'") (internal citation omitted).

between witnesses, and conflicting positions on issues in the litigation simply cannot rise to the level of unconscionable conduct necessary to establish a colorable claim of fraud on the Court.[5]

Unable to refute these arguments, Plaintiffs resort to conflating Judge Pollak's findings on the issue of the crime/fraud exception as supporting their fraud on the Court allegations.[6]  For example, Plaintiffs cite several of Judge Pollak's statements set forth on pages 37-40 of the Order.[7]  But those statements all reflect Judge Pollak's decision concerning the crime/fraud exception and all involve alleged actions by the Poly Prep Defendants in 2002 or earlier to cover up their alleged knowledge of past abuse, including alleged misleading communications to Plaintiffs and alumni.  None of Judge Pollak's statements cited by the Plaintiffs concerns the distinct issue of whether the Poly Prep Defendants and their counsel defrauded the Court during the pendency of this litigation.  Fraud on the Court must involve some effort to interfere with the Court's fair adjudication of a dispute by obstructing the other party's claim or defense.[8]  By contrast, a communication can be subject to the crime/fraud exception even if it is not a representation to the Court or does not reflect efforts to impede an opposing party's claim or defense.[9]  Moreover, Plaintiffs apply the wrong standard for a finding of fraud on the Court.  It is not enough for Plaintiffs' allegations to be "adequate to support a good faith belief" or present a "reasonable inference" of fraud.[10]  Rather, to establish fraud on the Court, Plaintiffs must show

---

[5]   *See* Objections at 6-10.

[6]   *See, e.g.*, Opp'n at 25 n.16 (relying on crime/fraud exception findings to argue Plaintiffs presented a colorable claim of fraud on the Court); *see id.* at 33, 35 (in discussing fraud on the Court, arguing that the Order found a "'good faith' basis" for the belief that there was a cover-up).  Conversely, Plaintiffs also point to O'Melveny's representations to the Court—which relate to the fraud on the Court allegations—in support of the order to produce a privilege log, which relates to the crime/fraud exception.  *See* Opp'n at 47-48.

[7]   Opp'n at 25, n.16.

[8]   Order at 49–50.

[9]   *See* Order at 14.

[10]  Opp'n at 22, 25 n.16.

by clear and convincing evidence[11] that the Poly Prep Defendants' representations to the Court were not made in good faith or were unreasonable.[12]  But since Judge Pollak recognized that there were "equally plausible," good-faith explanations[13] for the alleged misconduct she relied on as a basis for ordering the evidentiary hearing, Plaintiffs are unlikely to be able to satisfy the heightened clear and convincing standard, even if an evidentiary hearing were to occur.[14]

> **B.**   **The Evidentiary Hearing Ordered by Judge Pollak Would Improperly Require the Court to Determine Ultimate Issues and Interfere with the Relationship Between the Poly Prep Defendants and Their Counsel.**

Plaintiffs offer no response to the Poly Prep Defendants' point that holding an evidentiary hearing would require Judge Pollak to determine ultimate factual issues in the case which should be decided by the jury.[15]  The fraud on the Court motion is in large part premised on the allegation that the Poly Prep Defendants misrepresented to the Court their knowledge of the abuse prior to 1991.  A hearing would therefore require the Judge to make findings as to the Poly Prep Defendants' knowledge of the abuse.[16]  But because the extent of that knowledge is at the heart of Plaintiffs' negligent supervision and breach of fiduciary duty claims, a finding against the Poly Prep Defendants as a result of the hearing would effectively take this disputed factual

---

[11]   Plaintiffs have the burden ultimately to submit "clear and convincing evidence" of the Poly Prep Defendants' fraud on the Court.  *See Passlogix, Inc. v. 2FA Tech. LLC*, 708 F. Supp. 2d 378, 406–07 (S.D.N.Y. 2010).

[12]   *See, e.g.*, *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 460 (2d Cir. 1994) (holding that plaintiff counsel's representations "did not constitute a fraud on the Court" because plaintiff "had a good faith basis for believing that its breach of contract claim was not time-barred" and for believing defendant had accepted that plaintiff was entitled to compound interest); *see also Passlogix*, 708 F. Supp. 2d at 407 ("Fraud on the Court will not lie where the alleged misconduct merely consists of 'an advocate's view of the evidence, drawing all inferences favorable to the [client] and against the [adversary].'") (alterations in original).

[13]   Order at 71; *see* Objections at 10–11.

[14]   *See* Objections at 10-11.

[15]   *See* Objections at 11–13.

[16]   Plaintiffs' fraud on the Court claim is premised on allegations that the Poly Prep Defendants, in various ways, made efforts fraudulently to conceal that alleged knowledge from the Court; they could only have done so, of course, if they actually knew that the abuse had occurred.

issue from the jury[17] and quite conceivably dispose of a key defense.[18]  Plaintiffs offer no

explanation as to how this can be avoided.  They merely quote the Order that the evidentiary

hearing will be narrowly tailored to the "defendants' conduct during the litigation,"[19] but then

fail to address how their proposal to call 30 potential witnesses at the hearing is consistent with

such a narrowly tailored scope.[20]

      Plaintiffs also do not respond at all to the likelihood that an evidentiary hearing would

impede the attorney-client relationship.[21]  Indeed, Plaintiffs themselves have listed the

O'Melveny attorneys as potential witnesses, making it all but certain that they intend to inquire

into O'Melveny's privileged communications and relationship with its clients.[22]  A hearing

would thus place the Poly Prep Defendants in the impossible position of having to choose

between waiving the privilege and fully defending the allegations.

      For all these reasons, and those stated in the Objections, the Court should set aside Judge

Pollak's Order requiring an evidentiary hearing.

---

[17]    *See, e.g.*, *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897, 2011 WL 2581755, at *5 (S.D.N.Y. Apr. 29, 2011) (declining to hold a hearing because the Court could not "make the findings necessary to resolve Defendants' sanctions motion without impinging on the function of the jury"); *see also Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, No. CV03-3706, 2005 WL 3533153, at *12 (E.D.N.Y. Dec. 22, 2005) (rejecting allegations amounting to a claim of fraud on the Court because they were "an issue for the ultimate trier of the facts rather than for the Court to decide on a motion for sanctions," and "leav[ing] it to the finder of fact and the normal process of adjudication to determine the merits of each part[y's] position").

[18]    *See Kiobel*, 592 F.3d at 97 (Leval, J., concurring) (in considering whether magistrate judge had authority to impose Rule 11 sanctions, observing that "the analysis should be different for a sanction which does, in fact, dismiss a suit or prevent a claim or defense from being advanced") (citing *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) for the proposition that "imposition of certain sanctions under Rule 37, in some instances, may be considered 'case-dispositive,' requiring *de novo* review.")).

[19]    Opp'n at 25 (citing the Order at 73).

[20]    *See* Objections at 12.

[21]    *See* Objections at 13-14.

[22]    *Id.*

## II.     THERE IS NO LEGAL BASIS IN THE ORDER FOR THE PRODUCTION OF A PRIVILEGE LOG OF LITIGATION COUNSEL'S FILES.

The Plaintiffs also fail to offer any persuasive basis for Judge Pollak's Order requiring

the Poly Prep Defendants to provide a privilege log of their litigation files from the 2004-2006

*Paggioli* lawsuit and this lawsuit.   Once again, they completely ignore the points raised in the

Poly Prep Defendants' Objections: specifically, that (i) O'Melveny's privileged communications

during that time period could not be in furtherance of a fraud which is alleged to have occurred

in or before 2002; (ii) Plaintiffs' allegations do not support a good faith belief that there was

fraud; and (iii) preparation of the log would prejudice the Poly Prep Defendants by revealing

work product and litigation strategy and would be unfairly burdensome.

### A.     There Is No "Purposeful Nexus" Between Litigation Counsel's 2004-2012 Communications and Work Product and Plaintiffs' Allegations of Fraud in or Before 2002.

Plaintiffs make the obvious point – not disputed by the Poly Prep Defendants – that a

magistrate judge has the authority to order the production of a privilege log.   They further argue

in conclusory fashion that such a log is justified here because it is related to Judge Pollak's

"further investigation of the subject fraud issues."[23]   But Plaintiffs completely avoid the

fundamental issue: their allegations do not establish the necessary "purposeful nexus"[24] between

O'Melveny's files and the Plaintiffs' allegations of fraud by the Poly Prep Defendants since

O'Melveny's files were created years after the fraud underlying the crime/fraud exception is

alleged to have taken place.[25]   As detailed in the Objections,[26] a plain reading of the Order

---

[23]   *See* Opp'n at 39-40.

[24]   *See* Order at 16-17 (explaining the purposeful nexus requirement and citing in support *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984) and *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986)).

[25]   *See* Objections at 15-16 (citing the Order).

[26]   *Id.*

demonstrates that the only allegations found by Judge Pollak to be sufficient to support a good faith belief that the Poly Prep Defendants had attempted to perpetrate a fraud were "allegations relating to Poly Prep's response to specific allegations of sexual abuse prior to 2002 . . ., combined with the circumstances surrounding Mr. Sheridan's 'investigation' [in 2002], and Poly Prep's subsequent representations to plaintiffs and other alumni regarding that investigation."[27] Because these allegations relate to actions that were complete in or prior to 2002, as a matter of law, O'Melveny's privileged communications and documents – created no earlier than 2004 in connection with the *Paggioli* litigation, or 2009 when this litigation commenced – could not have been used "*in furtherance*" of this alleged fraud, a necessary element to establish a basis for the crime/fraud exception.[28]

Plaintiffs misconstrue the Order, suggesting that Judge Pollak's purpose in ordering the privilege log was to investigate the alleged fraud on the Court,[29] when it is clear that the basis for the log related to the issue of whether the Poly Prep Defendants should be ordered to produce privileged communications under the crime/fraud exception.[30]  Judge Pollak specifically did not find probable cause to believe that O'Melveny's conduct in this litigation was in furtherance of the Poly Prep Defendants' attempts to cover up the extent of the school's knowledge, the underlying basis for applying the crime/fraud exception.[31]  There is thus no justification for

---

[27]  Order at 37. *See also* Order at 40–41.

[28]  Order at 16-17 (acknowledging that "[t]he majority of courts have suggested that the crime/fraud exception applies only where the client's objective in communicating with his attorney is furthering the client's fraud[,]" and citing in support, *In re Grand Jury Subpoenas Duces Tecum, Dated Sept. 15, 1983*, 731 F.2d at 1039, which holds that the crime/fraud exception applies only where there is "probable cause to believe that a crime or fraud had been committed and that the communications [with counsel] were in furtherance thereof").

[29]  *See* Opp'n at 50.

[30]  *See* Order at 37, 40-41 (addressing the bases underlying Judge Pollak's finding on the crime/fraud exception). The Order addresses the crime/fraud exception first (at 14-49), directs production of the privilege log and documents for *in camera* review (at 48-49), and then addresses the alleged fraud on the Court (at 49-73).

[31]  *See* Order at 41 ("However, with respect to plaintiffs' claims about representations made by defendants' counsel in the course of this litigation, and particularly within the context of the parties' briefing and argument on

ordering production of a privilege log of O'Melveny's litigation files from 2004 to 2012, <u>after</u> the alleged conduct that gave rise to Judge Pollak's application of the crime/fraud exception.[32]

### B.      There Is No Basis for the Underlying Fraud Finding.

Plaintiffs quote numerous authorities on the crime/fraud exception standard and a court's authority to conduct *in camera* review without ever applying that law to this case or responding to the Poly Prep Defendants' arguments.  The Poly Prep Defendants have shown – in the Objections at pages 17-25[33] – that Plaintiffs' accusations of a scheme to cover up the Poly Prep Defendants' knowledge of past abuse in 2002 are speculative and readily susceptible to innocent explanations and therefore cannot support a good faith belief that there was fraud.[34]  Instead of addressing these issues, the Plaintiffs resort to speculation that the privilege log will reveal evidence of fraud in "representations made by [O'Melveny] to the court and Plaintiffs <u>in this litigation—not in 2002</u>."[35]  But Judge Pollak ordered a log to determine whether any communications made between 2004-2012 were potentially subject to the crime/fraud exception because they furthered an alleged fraud in 2002,[36] <u>not</u> whether 2004-2012 communications and

---

plaintiffs' spoliation motion, at this time the Court does not find that there is an adequate factual basis to believe that these statements were in furtherance of defendants' attempts to cover up the extent of the school's knowledge.  They could just as easily have been statements made in the course of mounting a legitimate defense to plaintiffs' litigation claims.")

[32]    *See* Order at 16 ("[O]nce the fraudulent conduct is no longer ongoing, communications rendered in the course of giving legal advice to a client are protected by the privilege; 'communications with respect to advice as to past or completed frauds are within the privilege.'") (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1041 (2d Cir. 1984)).

[33]    *See* Objections at 17-25 (addressing the Sheridan investigation and the Poly Prep Defendants' representations regarding the Sheridan investigation, specifically with respect to the October 2002 alumni letter and the December 2002 statements to counsel for Plaintiff David Hiltbrand).

[34]    *See* Objections at 18–25; *see also AP Links, LLC v. Russ*, No. 09-CV-5437, 2012 WL 3096024, at *4 (E.D.N.Y. July 30, 2012) (rejecting application of crime/fraud exception where allegedly contradictory testimony did not "rise to the higher standard of more than 'a simple, if reasonable suspicion of fraud' applied by courts in the Eastern and Southern Districts of New York") (quoting *Aiossa v. Bank of America*, No. 10-CV-1275, 2011 WL 4026902, at *6 (E.D.N.Y. Sept. 12, 2011)).

[35]    *See* Opp'n at 47-48.

[36]    *See* Order at 37, 40-41.

documents in O'Melveny's litigation files supported Plaintiffs' fraud on the Court theory. Plaintiffs' unsupported speculation was not the basis for <u>Judge Pollak's</u> Order requiring the Poly Prep Defendants to produce a privilege log, and cannot be invoked in support of that Order.

Plaintiffs further contend that "[O'Melveny's] files may also include evidence from investigations into Foglietta's pattern of sexually abusing children that predates the 2004 Paggioli lawsuit."[37]  But the pre-motion discovery in this case over two years has addressed that and no other issue, so as to allow Plaintiffs to attempt to discover information that could support their equitable estoppel arguments.  Plaintiffs have already obtained from Poly Prep all responsive, non-privileged documents, and even certain privileged documents subject to a limited waiver along with a detailed privilege log listing other protected materials, concerning any individual's knowledge of Foglietta's abuse (not limited to "investigations").  Plaintiffs cannot seriously argue that they have been deprived of responsive materials.[38]  But in any event, Plaintiffs are not entitled to a log of litigation counsel's files (or the ultimate production of those privileged files) simply because they are dissatisfied with the pre-motion discovery to date, which has not supported their theory of the case.[39]

### C.    A Log of Litigation Counsel's Files Will Reveal Litigation Strategy and Work Product, and is Unduly Burdensome.

Judge Pollak's Order to produce a privilege log of litigation counsel's files is also contrary to law because it will necessarily disclose to Plaintiffs the litigation strategy, mental impressions, and work product of the Poly Prep Defendants' counsel.  Because the privilege log

---

[37]    *See* Opp'n at 48.

[38]    *See* Opp'n at 50.

[39]    Plaintiffs also suggest as a basis for supporting Judge Pollak's order of a privilege log that "[i]t is equally plausible (and [O'Melveny] has not denied) that [O'Melveny] worked on Poly sex abuse matters prior to 2004 and maintains such records in its files."  Opp'n at 48.  First, Plaintiffs' speculation is unsupported by any evidence; O'Melveny did not represent Poly Prep in connection with any matter before 2004.  Second, even if it were true, that fact would not support Judge Pollak's order.

is directed at counsel in an ongoing litigation, it differs from the circumstances underlying the cases cited by the Plaintiffs,[40] in that it would effectively provide a roadmap of litigation counsel's strategy and work product during this very litigation.  For example, even non-privileged descriptions in a privilege log of interview memoranda would reveal which witnesses counsel regarded as significant for the defense.  None of the cases that Plaintiffs cite has imposed such a requirement in circumstances such as these.[41]

As detailed above and in the Objections,[42] the preparation of a privilege log would also impose an unreasonable burden on the Poly Prep Defendants in that it would require the review and listing of thousands of communications and work product documents generated in the 2004-2006 *Paggioli* litigation and in this litigation since 2009.  Plaintiffs suggest incorrectly that the Poly Prep Defendants are questioning Judge Pollak's authority to investigate and sanction discovery fraud by requiring the production of a log because their claims may be dismissed in their entirety.[43]  The point, however, is that none of the files to be logged, which would reflect communications and work product from 2004-2012, could be relevant to Plaintiffs' equitable estoppel arguments, the sole subject for the pre-motion discovery in this case.[44]  It is therefore overly burdensome, and at the very least premature, to require the Poly Prep Defendants to

---

[40]   *See* Opp'n at 38-44.

[41]   *Id.*  This case is very different from *Linde v. Arab Bank*, 608 F. Supp. 2d 351, 365–66 (E.D.N.Y. 2009), for example, where the district court ordered counsel to produce a privilege log and called for *in camera* production of documents relating to a declaration that plaintiffs alleged was fraudulent and about which the court expressed some concern.  Here, however, Judge Pollak ordered production of a privilege log of O'Melveny's files even after finding that there was *not* probable cause to believe that O'Melveny's conduct in this litigation was in furtherance of the alleged fraud that was the basis for the application of the crime/fraud exception.  *See* Order at 41.

[42]   *See* Objections at 16.

[43]   *See* Opp'n at 38–39; *cf.* Objections at 25–26.

[44]   See Objections at 25-26 (pointing out that attorney-client communications and attorney work product prepared by litigation counsel in defense of the *Paggioli* and *Zimmerman* lawsuits after those actions were commenced cannot possibly have affected the Plaintiffs' failure to file suit years earlier, and are thus not responsive to the Court's orders allowing limited pre-motion discovery on the equitable estoppel issue.)

provide a privilege log detailing thousands of communications and documents while the motion to dismiss is pending.

### III.   PLAINTIFFS' "NEW EVIDENCE" IS IRRELEVANT TO THE ALLEGED FRAUD ON THE COURT AND TO EQUITABLE ESTOPPEL.

Affidavits submitted by Plaintiffs with their opposition and documents recently produced by the Poly Prep Defendants are irrelevant to the question of whether Judge Pollak had a basis for ordering an evidentiary hearing and lend no support to Plaintiffs' equitable estoppel theory. Instead of responding to the discrete issues before the Court in this appeal, Plaintiffs have used these allegedly "new facts" to justify their reargument of the motion to dismiss.  It is clear, however, that neither the affidavits nor the additional documents have anything to do with Judge Pollak's rulings on Plaintiffs' fraud on the Court or crime/fraud discovery motions.  Plaintiffs may be hoping the Court will consider this additional evidence in connection with the pending motion to dismiss, as the Court indicated it was likely to consider the Objections and motion to dismiss together.[45]  While the Poly Prep Defendants do not believe this is the appropriate motion in which to address the new material presented by Plaintiffs, we feel compelled to comment on it briefly as it does not support Plaintiffs' equitable estoppel arguments or require an evidentiary hearing on fraud on the Court, contrary to Plaintiffs' contentions.

### A.   Affidavits Concerning 1997 Conversation

Plaintiffs have submitted with their opposition two affidavits concerning a 1997 conversation between Douglas Miller and Steven Andersen, a Poly Prep alumnus and current Poly Prep administrator, in which Mr. Andersen purportedly told Mr. Miller that former Poly Prep football coach Philip Foglietta was dismissed in 1991 because the parents of a student then

---

[45]   *See* Transcript of Oral Argument before Judge Block on June 20, 2012, at 3:24-4:8 (Opp'n Ex. A).

at the school accused him of abuse.[46]  Accepting, for the purposes of this motion, that the

information contained in both affidavits is accurate, a conversation alleged to have taken place in

1997 is legally irrelevant where the statute of limitations had expired on Plaintiffs' claims no

later than 1990, particularly given the fact that these affidavits do not allege that any abuse

victims – much less the Plaintiffs – learned of any alleged misrepresentations made in the 1997

conversation and relied on them in failing to bring their claims.  Thus, even crediting the new

information contained in the two affidavits, they have no bearing on Plaintiffs' equitable estoppel

argument.[47]

The Plaintiffs also mischaracterize the new affidavits as revealing for the first time that

the Poly Prep Defendants had knowledge of specific abuse complaints prior to the receipt of the

letter from Plaintiff David Hiltbrand in 1991.  But Plaintiffs already have alleged in their

Complaint that the Poly Prep Defendants were aware of the abuse before Mr. Hiltbrand came

forward in 1991.[48]  Further, because Plaintiffs had sufficient information to file suit at the time

and in the years after their abuse, the newly alleged complaint of abuse in 1991 did not change

Plaintiffs' knowledge.  The affidavits therefore add nothing to Plaintiffs' allegations, which have

been accepted as true for purposes of the motion to dismiss.

Plaintiffs also use the new affidavits as a pretext for rearguing the same points on

equitable estoppel that they previously made in their briefing on the motion to dismiss.  Because

---

[46]      *See* Affidavit of Douglas Miller dated June 13, 2012 (Opp'n Ex. B); Affidavit of Howard R. Caretto dated June 14, 2012 (Opp'n Ex. C).  Although we think it is unnecessary to decide the motion at hand, to the extent the Court is of the view that further factual development on this issue would be helpful to its consideration of either the Objections or the pending motion to dismiss, the Poly Prep Defendants are prepared to provide such information.  In particular, we can provide an affidavit from Steven Anderson that would demonstrate that Mr. Miller's account of their 1997 conversation is inaccurate.

[47]      *See, e.g.*, *Zumpano v. Quinn*, 6 N.Y.3d 666, 674–75 (2006).

[48]      *See, e.g.*, Compl. ¶¶ 49–54.

we have responded to those arguments at length in our briefs in support of the motion to dismiss, we will limit our current response to two of Plaintiffs' points.

First, Plaintiffs say that their claim should not be dismissed on statute of limitations grounds because they could not have pleaded all of the material elements of or sufficient facts to support a negligent supervision claim until 2009.[49]  To file negligent supervision claims, Plaintiffs need only have asserted, upon information and belief, that the Poly Prep Defendants had actual <u>or constructive</u> knowledge[50] of Foglietta's propensity for abuse.[51]  Plaintiffs' authorities concerning general pleading requirements are inapplicable here, where the issue is equitable estoppel.  The Poly Prep Defendants have moved to dismiss the state-law claims because they are time-barred, not because Plaintiffs have pleaded insufficient facts to support their claims or have not alleged the material elements of their claims.[52]  Plaintiffs' other cases are irrelevant as they either do not address equitable estoppel at all[53] or apply equitable estoppel where the plaintiff was unaware of the injury, which is not the case here.[54]

---

[49] *See, e.*g., Compl. ¶¶ 443, 456 (alleging that plaintiffs "had no ability to otherwise ascertain the nature and extent of the falsity of Poly Prep's aforesaid misrepresentations and deceptions at any time prior to August or September, 2009 (when [they] first learned that Plaintiff William Jackson had reported his sexual abuse to Headmaster Scull and Athletic Director Parker in 1966)").

[50]   Plaintiffs again incorrectly suggest that they needed to plead actual knowledge.  *Cf.* Pls.' Supplemental Mem. of Law in Opp. to Mot. to Dismiss at 13.  Plaintiffs also rely on *Bouchard v. N.Y. Archdiocese*, 719 F. Supp. 2d 255, 261–63 (S.D.N.Y. 2010), in which the court dismissed a negligent supervision claim on <u>summary judgment</u> because the plaintiff had not presented any evidence of either actual or constructive knowledge of propensity for sexual abuse.  *See* Opp'n at 10.

[51]   *See* Supplemental Reply Mem. of Law in Further Supp. of Mot. to Dismiss at 6–15.

[52]   *Cf.* Opp'n at 9–10, 12 n.9 (citing *Peri v. State of New York*, 66 A.D.2d 949, 949 (3d Dep't 1978); *E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 66 A.D.3d 122, 127 (2d Dep't 2009); *Dunahoo v. Hewlett-Packard Co.*, No. 11 CV 05588, 2012 WL 178332, at *3 (S.D.N.Y. Jan. 20, 2012); *Residents for More Beautiful Port Washington, Inc. v. N. Hempstead*, 153 A.D.2d 727, 729 (2d Dep't 1989)).

[53]   Opp'n at 13; *See Armstrong v. McAlpin*, 699 F.2d 79, 87–88 (2d Cir. 1983) (in securities fraud case, applying discovery accrual rule for fraud, not equitable estoppel based on fraudulent concealment, and holding that plaintiffs could have discovered fraud with reasonable diligence); *Schmidt v. McKay*, 555 F.2d 30, 37-38 (2d Cir. 1977) (reversing dismissal of common-law fraud claim under discovery accrual rule); *McGrath v. Dominican Coll. of Blauvelt*, 672 F. Supp. 2d 477, 491–92 (S.D.N.Y. 2009) (holding that common-law fraud claim based on school's concealment of past sexual assaults to induce victim to enroll in college was adequately pleaded); *see also* Opp'n at

Second, Plaintiffs devote substantial time to rehashing their attempt to distinguish *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006), the leading New York Court of Appeals case rejecting a claim of equitable estoppel under facts virtually identical to this case.  Plaintiffs once again argue that this Court should not follow *Zumpano* because unlike the plaintiffs there, they either made "timely inquiries" to investigate potential claims against Poly Prep before the running of the statute of limitations, or to the extent that they did not, such inquiries would have been futile because of the likely actions of the Poly Prep Defendants.  In setting up this distinction, however, Plaintiffs misconstrue *Zumpano*, which did not hinge on the fact that the plaintiffs did not make timely inquiries, but instead on the fact that "subsequent conduct by the defendant dioceses did not alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims."[55]  Similarly, Plaintiffs have not shown that any actions by the Poly Prep Defendants during the limitations period prevented their awareness of the essential facts and circumstances of their claims or impeded their timely investigation or commencement of their action.

The new affidavits also lend no support to Plaintiffs' allegations of fraud on the Court.  They show nothing more than that Mr. Miller and Mr. Andersen have different recollections of a 1997 conversation.  As we note above, mere differences in recollection cannot support a finding of fraud on the Court.[56]

---

19 n.11 (citing case law on a school's duty of care to students); *Erbe v. Lincoln Rochester Trust Co.*, 3 N.Y.2d 321, 326 (1957) (reversing dismissal of common-law fraud claim under discovery accrual rule).

[54]    *See St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 187 (E.D.N.Y. 2010) (applying equitable estoppel to contractual and quasi-contractual patent-related claims where plaintiff was not aware that patents had been issued or even that its research had produced patentable inventions).

[55]  *Id*. at 674.

[56]*See* Objections at 8 (inconsistencies in witnesses' recollections are not sufficient to support a finding of fraud on the Court).

### B.     Poly Prep Document Production

On June 15, the Poly Prep Defendants made a small supplemental production to Plaintiffs, including an e-mail from David Harman to the Board of Trustees attaching a draft of the October 2002 letter to alumni and five responses to that e-mail.  The supplemental production merely shows that Poly Prep circulated a draft of the October 2002 letter to alumni both to outside counsel and to the Board and that Poly Prep received feedback from various Board members on the letter.  When Plaintiffs complained about the production, the Poly Prep Defendants offered a further deposition of Mr. Harman so that Plaintiffs could question him about the newly produced documents.[57]  Without responding to that offer, Plaintiffs wrote to Judge Pollak to seek relief.[58]  Plaintiffs emphasized that they did not previously know that the Board reviewed a draft of the October 2002 letter, even though their Complaint alleges that members of the Board participated in the mailing of the letter,[59] and the very letter sent to alumni states that "the Board . . . authorized the sending of this letter to all alumni and a modified version to parents."[60]  Judge Pollak rejected Plaintiffs' contention that the documents were deliberately withheld, but accepted the Poly Prep Defendants' offer to allow Plaintiffs to take a supplemental deposition of Mr. Harman, which was held on June 28, and which is not referenced in Plaintiffs' opposition.

---

[57]    *See* June 21, 2012 Letter from Jeffrey Kohn to Kevin Mulhearn, attached hereto as Exhibit A to the Reply Declaration of Helen V. Cantwell in Further Support of the Poly Prep Defendants' Objections to Magistrate Judge Pollak's Order Dated June 5, 2012 ("Cantwell Reply Decl."); *see also* June 22, 2012 Letter from Jeffrey Kohn to Hon. Cheryl L. Pollak (Cantwell Reply Decl., Ex. B).

[58]    *See* June 21, 2012 Letter from Kevin Mulhearn to Hon. Cheryl L. Pollak (Cantwell Reply Decl., Ex. C)

[59]    Plaintiffs' Complaint alleges that "[u]pon information and belief, Defendants Harman, as well as members of the Poly Prep Board of Trustees directed, operated, managed, and/or participated in the aforesaid October 2002 alumni mailings and had actual and/or constructive knowledge of that letter's contents and representations[.]" Compl. ¶ 231.

[60]    *See* Oct. 28, 2002 Letter to Alumni (Cantwell Decl., Ex. G).  Mr. Petchesky also testified, upon reviewing a copy of the final 2002 letter at his deposition, that "[t]his indicates a draft of the letter was sent to the Board of Trustees[.]"  *See* Transcript of June 1, 2011 Deposition of Harry Petchesky, at 87:19–20 (Cantwell Reply Decl., Ex. D).  Plaintiffs do not reference that testimony by Mr. Petchesky.  *See* Opp'n at 33–35.

This "new evidence" similarly has no bearing on Plaintiffs' equitable estoppel or fraud on the Court claims. Because Plaintiffs' Complaint already alleges that the Board had approved the sending of the October 2002 letter,[61] and because Plaintiffs had sufficient information to file suit at the time and in the years after their abuse, the fact that the Board was shown a draft of the October 2002 letter does not affect Plaintiffs' equitable estoppel argument.[62] With respect to the alleged fraud on the Court, these documents reflect nothing more than additional instances of imperfect recollections due to the passage of time[63] or outright disagreements among witnesses,[64] and therefore constitute neither perjury nor fraud on the Court.

---

[61]     *See* Compl. ¶ 231. Plaintiffs also point to another document in the production, an e-mail from a Board member in 2002 concerning Foglietta's receipt of the "Spirit Award," as "new" evidence in support of their equitable estoppel arguments. *See* Opp'n at 36. But Plaintiffs have already pleaded in their Complaint that the Poly Prep Defendants, through school publications and events including award ceremonies, purportedly "represented that Foglietta remained in good standing at Poly Prep, and that Foglietta was held in high regard by Poly Prep administrators." *See, e.g.*, Compl. ¶¶ 534–35; *see also* Compl. Ex. F; *cf.* Opp'n at 35–37.

[62]     Even if the newly produced documents provided new information concerning the Board's participation in the mailing of the letter, that fact would be irrelevant to equitable estoppel because whatever the Board did or did not do in 2002 could not have affected the Plaintiffs' failure to bring their claims before the statute of limitations elapsed in 1990 or earlier.

[63]     Plaintiffs have no basis to argue that Mr. Harman's purported "false testimony" about whether he sent a draft of the October 2002 letter to the Board constitutes additional evidence of the Poly Prep Defendants' fraud. *See* Opp'n at 33. As a preliminary matter, when Plaintiffs' counsel asked Mr. Harman at his continued deposition about his previous testimony that he did not send the Board a draft of the October 2002 letter, Mr. Harman explained that he was simply mistaken about his recollection from eight years earlier and the documents refreshed his recollection. *See* Transcript of 6/28/12 Deposition of David Harman, at 66:4–67:10 (Cantwell Reply Decl., Ex. E); *see also id.* at 76:3–7 ("I've already said I was mistaken as to the timing of the letter to the board. I remember they got a copy of the letter. And, in fact, it was a draft, not the final letter.").

[64]     *See, supra*, n.60, 63 (addressing the deposition testimony of Mr. Petchesky and Mr. Harman).

**CONCLUSION**

For the foregoing reasons and the reasons set forth in the Objections, the Poly Prep

Defendants respectfully request that the Court set aside those parts of the Order requiring an

evidentiary hearing and the production of a privilege log of documents in the files of the Poly

Prep Defendants' litigation counsel.


Dated:   New York, New York
         August 17, 2012

                              DEBEVOISE & PLIMPTON, LLP

                              By:  /s/ Helen v. Cantwell

                              Mary Jo White
                              Matthew E. Fishbein
                              Helen V. Cantwell
                              919 Third Avenue
                              New York, New York  10022
                              (212) 909-6000

                              *Attorneys for Defendants Poly Prep Country Day
                              School, William M. Williams, David B. Harman,
                              and various members of the Poly Prep Board of
                              Trustees designated as "James Doe I-XXX"*