UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES ZIMMERMAN, PHILIP CULHANE, DAVID HILTBRAND, WILLIAM JACKSON, GEORGE ZAROU, JOHN JOSEPH PAGGIOLI, "JOHN DOE II," "JOHN DOE III," PHILIP C. HENNINGSEN, PHILIP LYLE SMITH, "JOHN DOE V," and DAVID ZARNOCK, <br><br> Plaintiffs, <br><br> -against- <br><br> POLY PREP COUNTRY DAY SCHOOL, WILLIAM M. WILLIAMS, DAVID B. HARMAN, AND VARIOUS MEMBERS OF THE POLY PREP BOARD OF TRUSTEES, WHOSE NAMES ARE CURRENTLY UNKNOWN AND THUS DESIGNATED AS "JAMES DOE I-XXX," HARRY PETCHESKY, ESQ., and MICHAEL NOVELLO, <br><br> Defendants. | No. 09 Civ. 4586 (FB) (CLP) <br><br> Electronically Filed |

**MEMORANDUM OF LAW IN SUPPORT OF THE POLY PREP DEFENDANTS' MOTION FOR RECONSIDERATION AND/OR CLARIFICATION OF THE COURT'S AUGUST 28, 2012 MEMORANDUM AND ORDER**

O'MELVENY & MYERS LLP
Jeffrey I. Kohn
Howard E. Heiss
Shiva Eftekhari
James E. Miller
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Defendants Poly Prep Country Day School, William M. Williams, David B. Harman, and various members of the Poly Prep Board of Trustees designated as "James Doe I-XXX"*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

I.     PLAINTIFFS' AWARENESS OF THEIR INJURIES AND THEIR
SOURCE TRIGGERED THEIR DUE DILIGENCE OBLIGATION. ................. 3

     A.    New York Law Clearly Instructs That the Obligation to Perform
Due Diligence Begins When the Plaintiff Is Aware of the Injury
and Its Source............................................................................................ 4

     B.    The Inquiry Notice Rule Applies to Sexual Abuse Claims. ...................... 7

II.    NEITHER PASSIVE CONCEALMENT NOR AFFIRMATIVE
MISREPRESENTATIONS WARRANT EQUITABLE ESTOPPEL
WHERE PLAINTIFFS KNEW THE UNDERLYING FACTS............................ 9

     A.    Plaintiffs' Allegations of Concealment Are Not Affirmative
Misrepresentations As a Matter of Law.................................................... 9

     B.    The Poly Prep Defendants' Knowledge or Lack Thereof Is Not an
Essential Element of Plaintiffs' Claims for Purposes of Equitable
Estoppel.................................................................................................. 11

III.   PLAINTIFF PAGGIOLI'S TITLE IX CLAIM IS BARRED BY THE
DOCTRINE OF *RES JUDICATA*..................................................................... 15

CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baselice v. Franciscan Friars Assumption BVM Province,*
  879 A.2d 270 (Pa. Super. Ct. 2005) ................................................................. 13

*Doe v. Archdiocese of Washington,*
  689 A.2d 634 (Md. Ct. Spec. App. 1997) ................................................ 3, 14, 15

*Doe v. Holy See,*
  793 N.Y.S.2d 565, 569 (3d Dep't 2005) ............................................................ 10

*Doe v. Kolko,*
  No. 06-CV-2096, 2008 WL 4146199 (E.D.N.Y. Sept. 5, 2008) ....................... 9, 12

*Doe v. Roman Catholic Archbishop of Detroit,*
  692 N.W.2d 398 (Mich. App. 2004) ........................................................ 13, 14

*Heffernan v. Straub,*
  655 F. Supp. 2d 378 (S.D.N.Y. 2009) ................................................................. 1

*Hoatson v. New York Archdiocese,*
  Index No. 102958/2007, 901 N.Y.S.2d 907, 2009 WL 3444960
  (Sup. Ct. N.Y. Cnty. Oct. 26, 2009) ................................................................ 12

*Mark K. v. Roman Catholic Archbishop of Los Angeles,*
  79 Cal. Rptr.2d 73, 79 (Cal. Ct. App. 1998). ................................................. 14

*Mars v. Diocese of Rochester,*
  763 N.Y.S.2d 885 (Sup. Ct. Monroe Cnty. 2003),
  *aff'd* 775 N.Y.S.2d 681 (4th Dep't 2004) ................................................. 8, 9, 12

*Mars v. Diocese of Rochester,*
  775 N.Y.S.2d 681 (4th Dep't 2004) ............................................................ 8, 9, 12

*Meehan v. Archdiocese of Philadelphia,*
  870 A.2d 912 (Pa. Super. Ct. 2005) ................................................................. 13

*Pahlad v. Brustman,*
  8 N.Y.3d 901 (2007) ............................................................................................. 5

*Pahlad v. Brustman,*
  823 N.Y.S.2d 61 (1st Dep't 2006) ............................................................... 5, 6, 7

*People ex rel. Spitzer v. Applied Card Systems,*
  11 N.Y.3d 105 (2008) ....................................................................................... 16

*Putter v. North Shore University Hospital,*
  7 N.Y 3d 548 (2006) ............................................................................... 4, 5, 7, 9

*Range Road Music, Inc. v. Music Sales Corp.,*
  90 F. Supp. 2d 390 (S.D.N.Y. 2000) ................................................................... 1

*Rochester v. Sixth Precinct Police Station,*
  370 F. App'x 244 (2d Cir. 2010) ......................................................................... 4

*Simcuski v. Saeli,*
  44 N.Y.2d 442 (1978) ................................................................................. 6, 7, 9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Skaftouros v. United States,*
  759 F. Supp. 2d 354 (S.D.N.Y. 2011) ........................................................................................ 1

*Woodlaurel Inc. v. Wittman,*
  606 N.Y.S.2d 39 (2d Dep't 1993) ............................................................................................... 3

*Zumpano v. Quinn,*
  6 N.Y.3d 666 (2006) ..........................................................................................................*passim*

**STATUTES**

Title IX, Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 (1972) ................... 2, 15, 16

**RULES**

Local Rule 6.3 .............................................................................................................................. 1

Defendants Poly Prep Country Day School, William Williams, David B. Harman, various members of the Poly Prep Board of Trustees, currently unknown and designated as "James Doe I-XXX" (collectively, "the Poly Prep Defendants") submit this memorandum of law in support of their motion for reconsideration of this Court's Memorandum and Order of August 28, 2012 ("Order"), or alternatively, for clarification of certain issues addressed in the Order.

## PRELIMINARY STATEMENT

Under Local Rule 6.3, a Court may reconsider a ruling where it overlooks "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380 (S.D.N.Y. 2009) (citing *Range Road Music, Inc. v. Music Sales Corp.,* 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000)); *see Skaftouros v. United States*, 759 F. Supp. 2d 354, 361–62 (S.D.N.Y. 2011).[1]

The Poly Prep Defendants respectfully request reconsideration or clarification of the Order because the Court overlooked controlling authority as to three issues directly related to the equitable estoppel showing that Plaintiffs must make. The Poly Prep Defendants also seek to preserve their objections to the application of potentially erroneous legal standards.

- *First,* the Court, in setting out the standard for due diligence on page 38, appears to have limited the inquiry in a way that is inconsistent with New York law. The Court stated that "[a]ll plaintiffs must further show that … they acted with due diligence in bringing their suit *within a reasonable period of time after they learned of the defendants' misconduct.*" That standard, if intended to exempt Plaintiffs from any due diligence based on inquiry notice, does not accord with New York law, especially in a case where, as here, *the injury and the source of the injury* were well-known to Plaintiffs at all times. One consequence of the Court's ruling, perhaps unintended, is that Plaintiffs now hope to expand the hearing on equitable estoppel to cover the Poly

---

[1] Under Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a party may, within fourteen (14) days of docketing of the Court's determination of the original motion, request that the Court reconsider its prior ruling. The moving party shall set "forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Rule 6.3.

Prep Defendants' conduct from 1966 to 2012.[2]  This strategy is not new.  Plaintiffs have always taken the position that they have no due diligence obligation because the Poly Prep Defendants' alleged "misconduct" has never "ceased to be operational" for purposes of equitable estoppel, even though Plaintiffs had sufficient information to file suit by 2009.[3]  Plaintiffs are evidently preparing for an extended evidentiary hearing that would show that the Poly Prep Defendants' alleged misconduct not only prevented them from filing suit before the statute of limitations expired, but also prevented them from filing suit until 2009 and in fact continues today.  In effect, Plaintiffs are arguing that the Court would need to consider the Poly Prep Defendants' conduct over decades yet would not need to consider any efforts that Plaintiffs made or should have made over the same period.

- *Second,* the Court distinguished the leading New York Court of Appeals case, *Zumpano v. Quinn,* on improper grounds:  first, that allegations of passive concealment by way of school publications and school events constitute "affirmative misrepresentations," and second, that Plaintiffs' awareness of the Poly Prep Defendants' actual knowledge of Foglietta's wrongdoing (as alleged by Plaintiffs) was an essential fact sufficient to toll the statute of limitations.  Respectfully, by distinguishing *Zumpano* in these ways, the Court has created a standard that conflicts with well-settled New York law and incorrectly relied on cases outside of New York that do not support this distinction.

- *Third,* the Poly Prep Defendants moved to dismiss Mr. Paggioli's claims on the grounds that he could have asserted the same claims or other claims arising out of the same transaction and series of transactions that were set forth in his original lawsuit.  There is no analytical difference between Mr. Paggioli's state law claims and his federal claim under Title IX, 20 U.S.C. §§ 1681–1688, which he added in the Third Amended Complaint (with Addendum) filed in March 2012 (after the Motion to Dismiss was filed).  To the extent that the Court finds that the Poly Prep Defendants did not seek dismissal of Mr. Paggioli's federal claim, it should exercise its discretion to dismiss Mr. Paggioli's Title IX claim in a manner consistent with *res judicata* principles.  In the alternative, the Poly Prep Defendants respectfully request leave to move to dismiss that claim.

---

[2] In document requests served a few days after the Court's Order, Plaintiffs seek a wide range of documents covering the period from 1966 to today for use at the evidentiary hearing.  For example, Plaintiffs seek "[a]ll Poly Prep newspapers . . . from January 1, 1966 to present" (Request No. 2) and "[a]ll letters, notes, correspondence, or memoranda from Poly Prep's Headmasters, to students, parents, or alumni, from 1966 to present" (Request No. 11).

[3] Plaintiffs' position is reflected in their Third Amended Complaint (with Addendum), filed in March 2012. *See, e.g.* Complaint ¶ 416 ("As Plaintiffs allege . . . the facts giving rise to Defendants' estoppel have *still not ceased to be operational.*") (emphasis added); ¶ 430 ("A plaintiff must exercise due diligence in bringing suit (or inquiring about the relevant facts) at the point in which the facts giving rise to the estoppel cease to be operational.").

Based on the possible errors described above, the Poly Prep Defendants respectfully request that the Court reconsider or, in the alternative, clarify its Order with regard to the correct legal standards to be applied to Plaintiffs' claims.

## I.   PLAINTIFFS' AWARENESS OF THEIR INJURIES AND THEIR SOURCE TRIGGERED THEIR DUE DILIGENCE OBLIGATION.

In the Order, this Court properly recognized that Plaintiffs' claims are *prima facie* time-barred because a cause of action for negligence accrues from the date of injury and that "the rule applies 'even if the plaintiff is unaware that he or she has a cause of action' at the time of injury."[4]  The Court noted that "the rationale [for the accrual rule] is that the injury puts the putative plaintiff on inquiry notice and, therefore, charges him or her 'with responsibility for investigating, within the limitations period, all potential claims and all potential defendants.'"[5] But in describing the several obstacles that Plaintiffs face in this action, the Court used language that may narrow the timeframe for Plaintiffs' due diligence obligation, which is contrary to New York law.  The Court stated, "All plaintiffs must further show that they justifiably relied on the misrepresentations and deceitful conduct in not bringing suit during the limitations period, *and they acted with due diligence in bringing their suit within a reasonable period of time **after they learned of the defendants' misconduct**.*"[6] But New York law does not limit a plaintiff's duty to engage in due diligence until after a plaintiff passively learns of alleged misconduct that would support his or her legal claim.  Rather, it requires a plaintiff to demonstrate due diligence *during the limitations period* if he is aware of his injury and the source of his injury, regardless of the nature or impact of the alleged concealment or misrepresentations. The Poly Prep Defendants

---

[4] Order at 29–30 (citing *Woodlaurel Inc. v. Wittman*, 606 N.Y.S.2d 39, 40 (2d Dep't 1993)).

[5] Order at 30 (citing *Doe v. Archdiocese of Wash.*, 689 A.2d 634, 644 (Md. Ct. Spec. App. 1997)).

[6] Order at 38 (emphasis added).

therefore respectfully request that the Court reconsider or clarify its statement of the legal standard for due diligence.

### A.   New York Law Clearly Instructs That the Obligation to Perform Due Diligence Begins When the Plaintiff Is Aware of the Injury and Its Source.

As the Second Circuit Court of Appeals has held, "[i]n New York, a plaintiff seeking to invoke either the doctrines of equitable estoppel or equitable tolling is required to demonstrate that the failure to timely commence the lawsuit is not attributable to a lack of diligence on his or her part."[7]  In prior briefing, the Poly Prep Defendants demonstrated that the New York Court of Appeals, as well as other courts, have consistently applied an "inquiry notice" standard for due diligence.[8]  Inquiry notice in this context means that a plaintiff's awareness of his injury and its direct source triggers his obligation to investigate potential legal claims.  New York law makes clear that Plaintiffs' due diligence obligation—the duty to inquire or investigate—was triggered by the incidents of abuse, and no later.

Recent decisions by the New York Court of Appeals reinforce well-recognized principles of New York law that require a plaintiff to exercise due diligence as soon as he is aware of his injury and the likely source of the injury.  In *Putter v. North Shore University Hospital*,[9] the plaintiff had contracted hepatitis C during surgery and filed a negligent hiring claim and other claims against the hospital many years after the surgery.  While the plaintiff was aware of his injury, plaintiff alleged that the hospital ***affirmatively misrepresented*** that his disease was of "unknown origin."  The New York Court of Appeals did not suggest that the plaintiff could have delayed investigating his negligent hiring claim until he learned about the hospital's prior

---

[7] *Rochester v. Sixth Precinct Police Station*, 370 F. App'x 244, 245 (2d Cir. 2010) (citing New York State cases).

[8] *See* Mem. of Law in Supp. of Poly Prep Defs.' Mot. to Dismiss Pls.' Revised Second Am. Compl. ("Poly Prep Mem.") at 31–33; Reply Mem. of Law in Further Supp. of Poly Prep Defs.' Mot. to Dismiss Pls.' Second Am. Compl. ("Poly Prep Reply Mem.") at 32–35.

[9] 7 N.Y 3d 548 (2006).

4

knowledge or misconduct.  Rather, "Putter had sufficient information available to require him to investigate whether there was a basis for a medical malpractice action . . . before the statute of limitations expired."[10]  The Court of Appeals concluded that the plaintiff had not exercised due diligence, even though he had questioned the hospital about his condition, and the hospital allegedly deceived the plaintiff about the source of his injury.  The Court relied upon the following facts:  first, plaintiff was aware of the injury itself.  Second, he "was advised by four medical professionals . . . that he mostly likely contracted hepatitis C either in the hospital or during surgery."[11]  Third, he was also advised that another patient contracted the same disease at the same hospital with the same surgeon.[12]  The plaintiff's lack of knowledge of the hospital's misconduct was not dispositive.

Relying on *Putter,* the New York Court of Appeals also affirmed the dismissal of a malpractice action in 2007 on the grounds that equitable estoppel was "inappropriate as a matter of law" where "[p]laintiffs had 'timely awareness of the facts requiring [them] to make further inquiry before the statute of limitations expired.'"[13]  In that case, an infant was born with severe birth defects but her parents waited to file suit against the medical providers, including the hospital, until after the limitations period expired, alleging that the defendants had misled them about the condition of the fetus.[14]  The First Department found that the plaintiffs had not exercised due diligence because, once they were aware of the injury, they "made *absolutely no further effort* to obtain the [sonogram] films until March 11, 2003, 19 months after their last

---

[10] *Id.* at 553.

[11] *Id.*

[12] *Id.*

[13] *See Pahlad v. Brustman*, 8 N.Y.3d 901, 902 (2007).

[14] *See Pahlad v. Brustman*, 823 N.Y.S.2d 61, 63–64 (1st Dep't 2006).

request for records, 17 months after [the hospital] responded to plaintiffs' August 2001 inquiry, and just two weeks prior to the expiration of the statute of limitations."[15]

In stating the due diligence standard for evaluating Plaintiffs' investigation of their claims in this action, the Court relied on the language used in the Court of Appeals' 1978 decision in *Simcuski v. Saeli*.[16] But the facts in *Simcuski* were very different. That case involved the rare situation in which ***the defendant hid from the plaintiff the source of her injury by misleading the plaintiff after she made an inquiry and the plaintiff did not learn of the likely source of her injury through other sources***.[17] Under these circumstances, and on a motion to dismiss, the Court did not impose any further duty of inquiry. In *Simcuski,* the plaintiff underwent surgery on her neck.[18] Following the operation, the plaintiff told her surgeon that she was experiencing numbness and that it was difficult and painful for her to raise her right arm. The plaintiff alleged that the physician was aware of the negligent manner in which he had performed the surgery and aware, too, that as a result of his negligence, she had suffered a potentially permanent injury. But the plaintiff further alleged that the physician informed her that her pain was transient and would disappear after a regimen of treatments he prescribed, thereby concealing the source of the injury and arguably the injury itself. The plaintiff argued that the defendant concealed the "source of her injury"—his own negligence—and that, only three years after the surgery, she was informed by another physician of the true source of her injury, which was later confirmed by a third doctor.[19] To assess whether the plaintiff had met the requirement for due diligence

---

[15] *Id.* (emphasis in original).

[16] 44 N.Y.2d 442 (1978).

[17] *Id.* at 451 ("The essential facts, here alleged . . . [include] defendant's intentionally concealing from his patient ***the fact of the malpractice***.").

[18] *Id.* at 447.

[19] *Id.* at 447.

sufficient to establish equitable estoppel, the Court of Appeals focused on the plaintiff's actions *after* the "conduct relied on cease[d] to be operational," i.e., after the plaintiff became aware of ***the source of her injury***: "Under this approach, which we endorse, the burden is on the plaintiff to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational."[20] Most notably, in *Putter*, the Court of Appeals specifically distinguished *Simcuski* because in *Putter*, the plaintiff "had sufficient information to require him to investigate whether there was a basis for a medical malpractice action," and the hospital's statement about the "unknown origin" of the disease "did not alter [plaintiff's] timely awareness of the facts requiring him to make further inquiry ***before the statute of limitations expired***."[21]

*Simcuski* is inapposite because Plaintiffs here do not allege that they were unaware of their injuries or their source—the source being the individual who directly caused their injury, Philip Foglietta.  Thus, as in *Putter* and *Pahlad*, Plaintiffs here were at least on inquiry notice of the institution's potential negligence from the moment they learned of their injury and its source.[22]  Therefore, if the standard described by the Court on page 38 of the Order excludes consideration of Plaintiffs' obligation to perform due diligence upon such inquiry notice, the standard is inconsistent with New York law.

**B.      The Inquiry Notice Rule Applies to Sexual Abuse Claims.**

The rule is no different in the context of sexual abuse claims.  Indeed, those cases reinforce that due diligence begins at the time of the injury, even in cases of alleged

---

[20] *Id.* at 450.

[21] *Putter*, 7 N.Y.3d at 553–54 (emphasis added).

[22] *Pahlad*, 823 N.Y.S.2d at 63 (plaintiff alleged that she would have terminated the pregnancy had the defendants correctly interpreted the sonogram); *Putter*, 7 N.Y.3d at 553–54 (plaintiff learned of his condition during postoperative testing several weeks after the surgery and the examining doctor advised him that he likely contracted the disease during surgery).

concealment.  A victim of sexual abuse, like Plaintiffs here, is undoubtedly aware of the injury

and its source.  The New York Court of Appeals and other courts have held that a plaintiff's

obligation to investigate his claims begins when, as each Plaintiff in this action, he was aware of

his injury (the abuse) and the source of his injury (the identity of his abuser and, by extension,

the abuser's employer).

- In *Zumpano v. Quinn*, the *Estate of Boyle* plaintiffs alleged that the Diocese of
  Brooklyn concealed the priests' conduct when they "did not report abuse by
  priests to law enforcement officials; reassigned offending priests without
  disclosure of their offenses; and, when victims complained, made private
  payments to them so that the charges would not be publicized."[23]  But the Court
  of Appeals held that, because the *Estate of Boyle* and *Zumpano* plaintiffs were
  aware of their injuries and their source, they "could have brought actions against
  the dioceses, ***or at least investigated whether a basis for such actions existed.***"[24]

- In *Mars v. Diocese of Rochester*, the plaintiffs sought relief for negligent retention
  and supervision and argued that their claims were timely because the diocese "had
  knowledge of [the abusive priest's] prior history of alcohol abuse, alcohol abuse
  with minors and sexual abuse of boys[] ***and . . . concealed this knowledge from
  plaintiffs***."[25]  Yet the court held that "[n]o alleged conduct on the part of the
  Diocese prevented plaintiffs from gathering essential facts prior to the expiration
  of the statute."[26]  (Notably, the court explained that those "essential facts," the
  "alleged tortious conduct," was not the diocese's prior knowledge ***but rather the
  abuse itself***, "conduct which by definition was within their knowledge."[27])  In
  affirming, the Fourth Department held that "equitable estoppel does not apply
  because plaintiffs ***possessed timely knowledge sufficient to place [them] under a
  duty to make inquiry and ascertain all the relevant facts*** prior to the expiration
  of the applicable Statute of Limitations."[28]

---

[23] 6 N.Y.3d 666, 675 (2006).

[24] *Id.* at 674 (emphasis added).  While the *Zumpano* court stated that the plaintiffs had the *option* to investigate
potential claims against the dioceses, the Court of Appeals also made clear in the same sentence and throughout its
opinion that plaintiffs knew more than enough to file actions against the dioceses without any investigation, even
though the dioceses had not "public[ly] confess[ed]" that they allegedly knew about the abuse and covered it up.
*See Zumpano*, 6 N.Y.3d at 675.

[25] 763 N.Y.S.2d 885, 888 (Sup. Ct. Monroe Cnty. 2003) (emphasis added), *aff'd* 775 N.Y.S.2d 681 (4th Dep't
2004).

[26] *Id.* at 889.

[27] *See id.* (emphasis added).

[28] *Mars v. Diocese of Rochester*, 775 N.Y.S.2d 681, 682 (4th Dep't 2004) (emphasis added).

New York law compels an analysis, in sexual abuse cases and other negligence claims, that Plaintiffs have demonstrated due diligence. It is an essential factor of the equitable estoppel analysis, and the due diligence requirement is not delayed until only "after [plaintiffs] learned of the defendants' misconduct." This Court's Order notes the relevant "inquiry" notice on page 30. As *Zumpano* and other authorities cited in the Order make clear, a victim knows all he needs to know from the moment he is abused. After this injury, he is obligated to make inquiries regarding his possible causes of action. Thus, the Court's articulation of the standard on page 38 of the Order, if intended to be so limiting, cannot be reconciled with New York law.

## II. NEITHER PASSIVE CONCEALMENT NOR AFFIRMATIVE MISREPRESENTATIONS WARRANT EQUITABLE ESTOPPEL WHERE PLAINTIFFS KNEW THE UNDERLYING FACTS.

The Court also held that Plaintiffs may be able to invoke equitable estoppel because they have alleged that the Poly Prep Defendants affirmatively concealed information that would support an element of the Plaintiffs' negligence claim.[29] But as demonstrated by *Simcuski*, *Putter*, *Zumpano*, and **every other** New York Court of Appeals case, as well as other sexual abuse cases like *Mars* and *Doe v. Kolko*,[30] New York law on equitable estoppel focuses on whether the plaintiff was aware of the fact and source of his injury. Because the Order departs from settled New York law, the Poly Prep Defendants respectfully urge the Court to reconsider its equitable estoppel analysis.

### A. Plaintiffs' Allegations of Concealment Are Not Affirmative Misrepresentations As a Matter of Law.

On pages 35 and 36 of the Order, the Court distinguishes *Zumpano*, stating:

All plaintiffs here have alleged that Poly Prep affirmatively misrepresented, at school events they attended and in school publications they received, that Foglietta 'remained in

---

[29] Order at 34.

[30] *See Doe v. Kolko*, No. 06-CV-2096, 2008 WL 4146199, at *5 (E.D.N.Y. Sept. 5, 2008).

good standing' and 'was held in high regard.' [citing to Paragraph 397 of the Third Amended Complaint.] Thus Foglietta was consistently portrayed to the plaintiffs as a reputable and esteemed football coach throughout the limitations period (1966-1991). While that conduct *could not have plausibly altered plaintiffs' knowledge to the contrary*, it might plausibly have led them to falsely believe that Poly Prep was unaware of Foglietta's misconduct and could not be liable for negligent retention or supervision.[31]

The Court's finding that school publications that implied that Foglietta "remained in good standing" are affirmative misrepresentations is inconsistent with New York courts' analysis in other sexual abuse cases. The allegations in *Zumpano* that the churches reassigned priests allowing them to remain in their positions, administer sacraments, and to lead their congregations, without disclosing their wrongdoing—thus implying that they remained upstanding members of the clergy—is no different from the acts alleged here—allowing publications and all-school events to allegedly suggest that Foglietta "remained in good standing at the school and was held in high regard."[32] Acts of keeping someone in the role of football coach, or priest, and publications or statements about them are not *affirmative* misrepresentations as a matter of law. Nearly every school or religious institution has publications like yearbooks or newspapers, conducts community events, and in some way "implies" the good standing of its continued employees simply by default. Indeed, during the February 3 oral argument on the Poly Prep Defendants' motion to dismiss, this Court identified Plaintiffs' allegations of "misrepresentations" from publications and yearbooks as, at most, the very same passive concealment that the *Zumpano* court rejected[33] as a basis for equitable estoppel.[34]

---

[31] Order at 35–36 (emphasis added).

[32] *See, e.g.*, Compl. ¶¶ 397–405.

[33] *See Zumpano*, 6 N.Y.3d at 674–75 (finding that upon allegations that defendants had paid off complaining victims, instructing that "[c]onduct like this may be morally questionable . . . *but it is not fraudulent concealment as a matter of law*.") (emphasis added); *see also Doe v. Holy See*, 793 N.Y.S.2d 565, 569 (3d Dep't 2005) (analyzing allegation that mother "approached the church to complain about the priest's inappropriate behavior" under framework of "concealment without actual misrepresentation").

[34] *See* 2/3/12 Hr'g Tr. at 19:22–24, *see also id.* at 20:2–3. This Court noted that controlling New York precedent—including *Zumpano*—requires more than allegations such as these that merely "deal[] with the concealment" rather

**B.     The Poly Prep Defendants' Knowledge or Lack Thereof Is Not an Essential Element of Plaintiffs' Claims for Purposes of Equitable Estoppel.**

As made clear in *Zumpano*, neither concealment nor affirmative misrepresentations can be grounds for equitable estoppel in a negligent hiring or negligent supervision action based on abuse if the conduct did not alter the plaintiff's knowledge that he was abused, the identity of his abuser, and the fact that the abuser was employed by the defendant.[35]  But here, in analyzing equitable estoppel, the Court found that Plaintiffs needed to know that the Poly Prep Defendants purportedly had actual knowledge of Foglietta's abusive conduct.[36]  While actual or constructive knowledge of an employee's propensity for misconduct is an element of a negligent hiring or supervision claim that a plaintiff ***must plead*** and eventually prove, it has no relevance to the statute of limitations or equitable estoppel.  Rather, a negligence claim accrues upon injury, and a plaintiff who is aware of the "essential facts and circumstances underlying" their claims—the abuse and its source—must file suit during the limitations period.[37]  As the Poly Prep Defendants have explained, to file negligent supervision claims, Plaintiffs need only have asserted the Poly Prep Defendants' actual or ***constructive*** knowledge upon information and belief.[38]

- The *Zumpano* Court instructed that the negligence claims against the diocese defendants accrued and ran from the moment that the plaintiffs "had sufficient knowledge to bring an intentional tort cause of action against the individual priests"[39]—***not from plaintiffs' later discovery*** that the diocese defendants had been on notice of wrongdoing.  Because the plaintiffs knew at the time of their injury "that the priests were employees of the dioceses," the Court concluded that

---

than with any affirmative misrepresentation, and which also fail to "make the nexus or the connection to . . . inducing plaintiffs to forego suit."  2/3/12 Hr'g Tr. at 19:20–20:3; 24:12–14.

[35] *See Zumpano*, 6 N.Y.3d at 675–76; *see also id.* at 674 ("It is not enough that plaintiffs alleged defendants were aware of the abuse and remained silent about it."); *see also* 2/3/12 Hr'g Tr. at 22:10–23:19 (discussing *Zumpano*).

[36] *See* Order at 36.

[37] *Zumpano*, 6 N.Y.3d at 674.

[38] *See* Supplemental Reply Mem. in Supp. of Poly Prep Defs.' Mot. to Dismiss Pls.' Third Am. Compl. (with Addendeum), at 4–15; *see also* Poly Prep Mem. at 28–31; Poly Prep Reply Mem. at 25–26.

[39] *Zumpano*, 6 N.Y.3d at 674.

the limitations period on their negligent supervision claims began to run from that moment. The New York Court of Appeals never suggested that a plaintiff who claims ignorance of a defendant's knowledge of prior incidents could have waited to bring suit until the time that he learns of other victims and prior allegations brought to the attention of the diocese.[40]

- In *Doe v. Kolko*, the Court rejected equitable estoppel where plaintiffs brought negligence claims against their synagogue and argued that their claims were timely because they "were led to believe that Torah Temimah was not on notice of Rabbi Kolko's dangerous sexual propensities."[41] Plaintiffs' allegations, Judge Townes concluded, "demonstrate[] [their] fundamental misunderstanding of the equitable estoppel doctrine" because the plaintiffs must "explain how this conduct stopped ***them*** from filing suit."[42]

- The court in *Mars v. Diocese of Rochester* concluded similarly by dismissing the plaintiffs' negligent supervision and retention claims where institutional defendants allegedly "concealed . . . knowledge [of abuse] from plaintiffs by moving [the abusive priest] from parish to parish, changing his work responsibilities and continuing to allow him to administer sacraments."[43]

In short, these New York cases and others cannot be reconciled with the Court's Order.[44]

Lastly, on page 34 of the Order, the Court relied on several cases from other jurisdictions that are cited in *Zumpano*. The Court states that these cases support a finding that "affirmative misrepresentations or deceitful conduct designed to keep a potential plaintiff from gaining

---

[40] The Court of Appeals set forth the burden as follows: "It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants *somehow kept them from timely bringing suit.*" *Zumpano*, 6 N.Y.3d at 674 (emphasis added). The Court went on to explain, "each plaintiff was aware of the sexual abuse he or she suffered at the hands of defendant priests. Certainly they had sufficient knowledge to bring an intentional tort cause of action against the individual priests. Plaintiffs were likewise aware that the priests were employees of the dioceses and could have brought actions against the dioceses, *or at least investigated whether a basis for such actions existed.* Plaintiffs do not allege they made timely complaints to the dioceses regarding clergy mistreatment. Subsequent conduct by the dioceses did not appear in any way to alter plaintiffs' early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims." *Id.* (emphasis added).

[41] No. 06-CV-2096, 2008 WL 4146199, at *5 (E.D.N.Y. Sept. 5, 2008).

[42] *Id.* at *4 (emphasis in original).

[43] 763 N.Y.S.2d 885, 888 (Sup. Ct. Monroe Cnty. 2003) (dismissing as time-barred negligent supervision and retention claims against diocese), *aff'd* 775 N.Y.S.2d 681 (4th Dep't 2004); *see also Hoatson v. New York Archdiocese*, Index No. 102958/2007, 901 N.Y.S.2d 907, 2009 WL 3444960, at *4 (Sup. Ct. N.Y. Cnty. Oct. 26, 2009) (dismissing claims against a priest and diocese as time-barred even though plaintiff alleged that "defendants 'cleansed' their files, covered up evidence, and rejected his reports of sexual abuse," and further "made it known to plaintiff[] that nothing would be done about his abuse, and that no one would be held accountable").

[44] *See, e.g., Hoatson v. New York Archdiocese*, 2009 WL 3444960, at *4.

knowledge of an essential element of a viable cause of action for a claim of negligent retention or supervision by an employer of a sexual predator would be a game-changer."[45]  But a review of the cases demonstrates that the knowledge of an employer, such as Poly Prep, is *not* one of the "essential facts" that a plaintiff must know to file (or at least investigate) a negligence cause of action and therefore, the alleged concealment of such knowledge—whether by affirmative misrepresentations or otherwise—is insufficient to toll the statute of limitations.

- In *Baselice v. Franciscan Friars Assumption BVM Province,* the court rejected the plaintiff's argument that misrepresentations by the diocese defendants tolled the statute of limitations.[46]  The court concluded that fraudulent concealment could not toll the statute of limitations where the plaintiff did not allege that the Archdiocese "***misled him into believing that the alleged sexual abuse did not occur, that it had not been committed by [the priest employed by the Church], or that it had not resulted in injury to the appellant***."[47]  Therefore, *Baselice* does not, as the Order states, support a finding that Poly Prep may have prevented Plaintiffs from filing suit simply by suggesting that Foglietta remained in good standing at the school.[48]  Just as *Zumpano* instructs, the *Baselice* court held: "[F]or a cause of action to accrue, ***the entire theory of the case need not be immediately apparent***.  As soon as the appellant became aware of the alleged abuse, ***he should also have been aware that the appellees, as the priest's employers, were potentially liable for that abuse***."[49]

- *Doe v. Roman Catholic Archbishop of Detroit* also examined whether the institutional defendant concealed "essential elements of potential causes of action."[50]  Like the *Zumpano* court, the Michigan Court of Appeals limited these "essential elements" to the critical facts underlying a negligence claim:  the fact of injury, the identity of the abuser, and the knowledge that the defendant employed the abuser.  The Michigan court held that plaintiff alleged in support of his negligence claim that the church failed to: (i) take steps to protect plaintiff; (ii) act with reasonable care and caution in hiring, training, investigating, and supervising [the alleged abuser]; (iii) adopt a policy to detect and prevent sexual abuse by

---

[45] Order at 34.

[46] 879 A.2d 270, 279 (Pa. Super. Ct. 2005).

[47] *Id.* (emphasis added).

[48] The Court noted that "only that *had* a victim complained"  and "*had* the Archdiocese affirmatively and independently acted in response to appellant's inquiries so as to mislead appellant into forgoing his suit, the fraudulent concealment exception would later allow appellant's suit." *Id.*

[49] *Id.* (citing *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 922 (Pa. Super. Ct. 2005)) (emphasis added).

[50] 692 N.W.2d 398, 405 (Mich. App. 2004).

priests; and (4) otherwise act prudently and properly to avoid causing harm to the plaintiff.[51]  Although "it should have been clear to [the plaintiff] that the defendant" knew or should have known about the abuse, it did not matter whether the plaintiff knew of defendant's knowledge or lack thereof.[52]  The court held that "defendant's failure to publicly[53] disclose [the alleged abuser's] actions or defendant's knowledge of them *did not in any way prevent plaintiff from knowing that he was abused* by a Catholic priest who was under the supervision and control over the defendant, that the sexual abuse took place on church property, that the defendant failed to prevent [the abuse], and that the plaintiff was harmed."[54]

- *Mark K. v. Roman Catholic Archbishop of Los Angeles* is also consistent with *Zumpano*.[55]  The *Mark K.* court held that although plaintiffs had timely reported abuse to the church at least twice and the church had responded that it would "take care of it," the doctrine of fraudulent concealment did not toll the statute of limitations because the church did not conceal the fact of injury—the fact that Plaintiff knew he was abused and that the priest was an employee of the church.[56]  The plaintiff's absolute knowledge of these two facts obligated the plaintiff to determine "whether the church shouldered some responsibility for the misconduct of the priest" and to file his negligence claim within the statutory period.[57]

- Finally, *Doe v. Archdiocese of Washington* also demonstrates that a plaintiff need not be aware of the institution's actual knowledge of abuse to file suit.[58]  There, the plaintiff sued the archdiocese on theories of negligence in 1995, seventeen years after the last incident of alleged abuse.  He argued that his claims did not accrue until then because he learned that year that the archdiocese had "long known" that one of the alleged abusers had a history of pedophilia.[59]  After the

---

[51] *Id.*

[52] "In either case, plaintiff should have known that a 'possible cause of action' [existed against the Church] because he knew at the time of his injury that the priest was active in the Church, employed and under the direction and supervision of the defendant, and that the Church represented the priest as a fit priest and spiritual leader." *Id.* at 406.

[53] *See also id.* at 407–408 ("It was not necessary for plaintiff to know of widespread abuse in the church for him to have had knowledge of his causes of action against defendant. Thus, even if defendant attempted to conceal the 'widespread sexual abuse' problem from the public at large this attempt could not have concealed from plaintiff his causes of action against defendant . . . [because] plaintiff knew or should have known the elements comprising his cause of action at the time of the abuse.).

[54] *Id.* at 407 (emphasis added).

[55] 79 Cal. Rptr.2d 73, 79 (Cal. Ct. App. 1998).

[56] *Id.* at 78–79 (rejecting plaintiff's claim for estoppel by concealment because plaintiff did not allege "that he was unaware of the fact that he had been molested by [his abuser] or that he failed to appreciate the wrongfulness of [his abuser's] conduct until some subsequent event triggered his memory.").

[57] *Id.*

[58] 689 A.2d 634, 644 (Md. Ct. Spec. App. 1997).

[59] *Id.* at 643.

trial court dismissed his claims as time-barred, the Maryland Court of Special Appeals affirmed the decision.  The appellate court rejected the plaintiff's contention that allegations that "the Archdiocese 'negligently and recklessly assisted [the defendant priests] in suppressing public knowledge of [the defendant priests'] prior history of sexual molestation'" were sufficient to toll the statute.[60] The court stated: "There is not a single specific allegation of conduct on the part of the Archdiocese that kept Doe in ignorance of his claims.  *To the contrary, when the priests molested Doe, he was immediately on notice of potential claims against the priests as well as against the Archdiocese as their employer.*"[61]

The standard adopted by this Court may allow an untimely negligence claim to proceed upon allegations that a defendant held an abuser in "high regard," even where a plaintiff could have filed a claim and pleaded actual or constructive knowledge, whether based on fact or information and belief, within the statutory period.  No other case has endorsed equitable estoppel in the context of sexual abuse when a plaintiff knew of his injury, the identity of his abuser, and his abuser's employer, yet alleged that the defendant (i) concealed information about its own knowledge of the abuse, (ii) portrayed the abuser in a positive light, or (iii) dismissed plaintiff's reports of abuse.  The Poly Prep Defendants respectfully request that the Court reconsider the standard it adopted because it is inconsistent with New York precedents.

## III.   PLAINTIFF PAGGIOLI'S TITLE IX CLAIM IS BARRED BY THE DOCTRINE OF *RES JUDICATA.*

In footnote 6 on page 29 of the Order, the Court dismissed Plaintiff Paggioli's state law claims but preserved his Title IX claim[62] on the grounds that the Poly Prep Defendants did not argue that *res judicata* bars Mr. Paggioli's federal claims.  The Poly Prep Defendants respectfully ask this Court to reconsider its Order.  As the Court stated in its Order, "*res*

---

[60] *Id.* at 644.

[61] *Id.* (emphasis added).  While the Court quotes language in the opinion that the plaintiff did not plead that "once he inquired of the Archdiocese, the Church negligently or deliberately mislead him as to what it knew about the priests," the *Doe* court also makes clear that "when the priests molested Doe, he was immediately on notice of potential claims against the priests as well as against the Archdiocese as their employer." *Id.*

[62] The Court dismissed Mr. Paggioli's RICO claims on other grounds.

*judicata* . . . bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was."[63]

While the Poly Prep Defendants' *res judicata* argument appeared in the "state law" section of the briefs prepared prior to the amendment of the complaint to add a Title IX claim in March 2012, the Poly Prep Defendants argued that the standard for *res judicata* bars all claims that arise from the same transaction or series of transactions asserted in a prior lawsuit.[64] A Title IX claim, which appeared in the last amendment of the Complaint filed in March 2012 and challenged the same conduct arising out of his abuse, could have been included in Mr. Paggioli's initial lawsuit against the school. He chose not to bring such a claim.[65] Mr. Paggioli could have filed his previous lawsuit in federal court, asserting his Title IX claim and appending his state law claims. The Court should therefore exercise its discretion to dismiss Mr. Paggioli's Title IX claim here. In the alternative, if the Court does not dismiss Mr. Paggioli's claim, the Poly Prep Defendants respectfully request an opportunity to move to dismiss that claim.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Poly Prep Defendants' memoranda of law in support of the motion to dismiss, the Poly Prep Defendants respectfully request that the Court reconsider or clarify certain rulings in the Order.

---

[63] Order at 27 (quoting *People ex rel. Spitzer v. Applied Card Sys.*, 11 N.Y.3d 105, 122 (2008)).

[64] Poly Prep Mem. at 23–24; Poly Prep Reply Mem. at 20–23.

[65] *See Paggioli v. Poly Prep Country Day School*, Index No. 29497/2004, Compl. (attached as Exhibit C to the Declaration of Shiva Eftekhari ("Eftekhari Decl.") in support of Poly Prep Defs.' Mot. to Dismiss Revised Second Am. Compl., filed in this action on December 22, 2011); *see Paggioli v. Poly Prep Country Day School*, Index No. 11188/2005, Am. Compl. (Eftekhari Decl. Ex. D).

Dated: New York, New York
      September 11, 2012

                O'MELVENY & MYERS LLP

By                                  
              Jeffrey I. Kohn

Jeffrey I. Kohn
Howard E. Heiss
Shiva Eftekhari
James E. Miller
Seven Times Square
New York, New York 10036
Telephone: (212) 326-2000
Fax: (212) 326-2061
jkohn@omm.com

*Attorneys for Defendants Poly Prep Country Day
School, William M. Williams, David B. Harman,
and various members of the Poly Prep Board of
Trustees designated as "James Doe I-XXX"*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JAMES ZIMMERMAN, PHILIP CULHANE,
DAVID HILTBRAND, WILLIAM JACKSON,
GEORGE ZAROU, JOHN JOSEPH PAGGIOLI,
"JOHN DOE II," "JOHN DOE III," PHILIP C.
HENNINGSEN, PHILIP LYLE SMITH, "JOHN
DOE V," and DAVID ZARNOCK,

     Plaintiffs,

   -against-

POLY PREP COUNTRY DAY SCHOOL,
WILLIAM M. WILLIAMS, DAVID B.
HARMAN, AND VARIOUS MEMBERS OF
THE POLY PREP BOARD OF TRUSTEES,
WHOSE NAMES ARE CURRENTLY
UNKNOWN AND THUS DESIGNATED AS
"JAMES DOE I-XXX," HARRY PETCHESKY,
ESQ., and MICHAEL NOVELLO,

     Defendants.

No. 09 Civ. 4586 (FB) (CLP)

---

## CERTIFICATE OF SERVICE

   I, James E. Miller, certify that on September 11, 2012, I served true and accurate copies

of the attached (1) Notice of Poly Prep Defendants' Motion for Reconsideration and/or

Clarification of August 28, 2012 Memorandum and Order, and (2) Memorandum of Law in

Support of the Poly Prep Defendants' Motion for Reconsideration and/or Clarification of the

Court's August 28, 2012 Memorandum and Order, by Federal Express and email on:

| | |
|---|---|
| Kevin T. Mulhearn, Esq.<br>60 Dutch Hill Road, Suite 8<br>Orangeburg, NY 10962<br>Tel:  845.398.0361<br>Fax:  845.398.3836<br>Email:  kmulhearn@ktmlaw.net | Edward Flanders, Esq.<br>Kimberly L. Buffington, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>1540 Broadway<br>New York, NY 10036<br>Tel:  212.858.1638<br>Fax:  212.858.1500<br>Email: edward.flanders@pillsburylaw.com<br>Email: kbuffington@pillsburylaw.com |
| Harry Petchesky, Esq.<br>Seichet & Davis, PC<br>767 Third Avenue, 24th Floor<br>New York, NY 10017-2023<br>Tel:  212.688.3200<br>Fax:  212.371.7834<br>Email:  Harry@scheichetdavis.com | David G. Trachtenberg, Esq.<br>Steven J. Arena, Esq.<br>Trachtenberg Rodes & Friedberg LLP<br>545 Fifth Avenue, Suite 640<br>New York, NY 10017<br>Tel:  212.972.2929<br>Fax:  212.972.7581<br>Email: dtrachtenberg@trflaw.com<br>Email: sarena@trflaw.com |
| Philip Touitou, Esq.<br>Concepcion A. Montoya, Esq.<br>Hinshaw & Culbertson, LLP<br>780 Third Avenue, 4th Floor<br>New York, NY 10017<br>Tel:  212.471.6211<br>Fax:  212.935.1166<br>Email: ptouitou@hinshawlaw.com<br>Email: cmontoya@hinshawlaw.com | |

Dated: New York, New York
      September 11, 2012

_____
James E. Miller